*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0176p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

BEVERLY L. MILLER,

        *Plaintiff-Appellant,*

    *v.*

ADMINISTRATIVE OFFICE OF THE COURTS, JUDGE
THOMAS B. WINE, in his individual capacity, TIM
VIZE, in his individual and official capacities, and
JUDGE JAMES M. SHAKE, in his official capacity,

        *Defendants-Appellees.*

> No. 05-5981

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 01-00339—Charles R. Simpson III.

Argued: April 26, 2006

Decided and Filed: May 23, 2006

Before: SUHRHEINRICH, GILMAN, and ROGERS, Circuit Judges.

_____

## COUNSEL

_____

**ARGUED:** Thomas E. Clay, CLAY, KENEALY, WAGNER & ADAMS, Louisville, Kentucky, for Appellant. Cynthia Blevins Doll, WYATT, TARRANT & COMBS, Louisville, Kentucky, Robert E. Stopher, BOEHL, STOPHER & GRAVES, Louisville, Kentucky, Margaret E.M. Keane, GREENEBAUM, DOLL & McDONALD, Louisville, Kentucky, for Appellees. **ON BRIEF:** Thomas E. Clay, CLAY, KENEALY, WAGNER & ADAMS, Louisville, Kentucky, for Appellant. Cynthia Blevins Doll, Lisa C. DeJaco, WYATT, TARRANT & COMBS, Louisville, Kentucky, Robert E. Stopher, Robert D. Bobrow, BOEHL, STOPHER & GRAVES, Louisville, Kentucky, Margaret E.M. Keane, Melissa Norman Bork, Laurel S. Doheny, GREENEBAUM, DOLL & McDONALD, Louisville, Kentucky, for Appellees.

_____

## OPINION

_____

    RONALD LEE GILMAN, Circuit Judge. After Beverly Miller was fired from her job of over 24 years as the jury-pool manager for Jefferson County, Kentucky, she sued the Administrative Office of the Courts (AOC) as well as various county officials. She alleged a First Amendment violation on the basis that her termination was in retaliation for bringing to light various

1

administrative problems, and further claimed that she was deprived of her right to due process because she was not afforded notice or an opportunity to be heard prior to her termination. Miller also brought a claim under the Kentucky Whistleblower Act.

The district court dismissed the claims against the individual defendants in their official capacities and against the AOC on the basis of Eleventh Amendment sovereign immunity. Miller's claims against the officials in their individual capacities were dismissed on the basis of qualified immunity. She now appeals the dismissal of her individual-capacity claims and the dismissal of her Kentucky Whistleblower Act claim. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A.    Factual background

#### 1.    *Miller's employment as jury-pool manager*

In 1976, Miller was hired to serve as the jury-pool manager for Jefferson County, Kentucky by then-Chief Judge Michael McDonald. She reported directly to the Chief Judge. Miller retired in 1999, but soon thereafter was reappointed to the same job. Instead of being called the "jury-pool manager" after her reappointment, however, Miller was classified as a "professional-services supervisor." But her pay did not change, and she performed the same duties managing the jury pool. She continued to perform these duties until she was fired on April 24, 2001.

The issue of whether Miller served as a tenured or nontenured employee was a "difficult" one, according to the district court. Judge McDonald, who hired Miller, testified that the position was tenured. He said that the position was essential to the operation of the court and should not be subject to replacement with each new chief judge. Her appointment letter, however, stated that Miller was "to serve at the pleasure of the Court." Miller argues that, in addition to Judge McDonald's intent to hire her as a tenured employee, two other sources of information show that she was a tenured employee: the Court of Justice (COJ) policies and the COJ Personnel Documents.

The COJ policies state that they apply to employees and officials unless a "specific exception [is] clearly indicated." AOC Director Cicely Lambert testified that this provision sets up a system whereby employees of the AOC are considered to be tenured unless they are specifically listed in the "exceptions" portion of the rule. Job classifications like "secretaries for judges in all courts," "law clerks and staff attorneys," and "trial court administrators" are listed among the exceptions. The defendants argue that Miller falls under the exception for the job classification of "trial court administrators," even though her official title was "jury-pool manager" and later "professional-services supervisor."

Under the COJ policies, tenured employees are entitled to various pre-termination procedures, but nontenured employees "serve at the pleasure of their respective appointing authority" and are not so entitled. The defendants acknowledge that Miller was not afforded the pre-termination procedures required for tenured employees, but insist that she was not tenured and therefore not entitled to those procedures.

In addition to the COJ policies, Miller points to the fact that she served a probationary period, a requirement only for tenured employees. She also claims that her annual pay increment was inconsistent with the COJ policies regarding nontenured employees.

The defendants, on the other hand, highlight that Miller has conceded that she was not a "classified" or "merit" employee under Kentucky Revised Statutes Chapter 18A. Under Chapter

18A, these types of employees are considered to be tenured and are entitled to the pre-termination procedures. Ky. Rev. Stat. § 18A.095(3). Miller calls this argument a "red herring," contending that the appropriate places to look to determine the tenured status of a COJ employee are the COJ policies and the employee's personnel file, not the listings in Chapter 18A.

### 2. *The nature of Miller's complaints that allegedly resulted in her termination*

In her complaint, Miller alleges that her termination resulted from two separate communications that she initiated about issues of court administration. One involved her complaints regarding "fraud, waste, and mismanagement in the conduct of the Chief Court Administrator Tim Vize and the Court Administrator Roger McCubbins" that "direct[ly] result[ed]" in her termination, in violation of the Kentucky Whistleblower Act. The other concerned an email she sent regarding the loss of privately donated funds, allegedly causing her termination in violation of her right to free speech under the First Amendment. These two sets of allegations will be addressed in turn.

### a. *Miller's complaints regarding Vize and McCubbins*

Miller claims that she disclosed to Chief Judge Wine, AOC Director Lambert, Vize, and others, both verbally and in writing, that Vize and McCubbins "were being paid to perform duties with respect to the jury pool which they, in fact, had never performed." The job descriptions for "Chief Court Administrator" and "Court Administrator" have two relevant sections—"Characteristics of the Class" and "Examples of Duties." Under the "Characteristics of the Class" heading, both descriptions state that the employee "performs highly responsible duties in . . . jury management." Then, as an example of these duties, both descriptions state that the employee "[a]ssists in the calling and pooling and coordination of jurors, answers public inquiries and individual juror complaints and questions, distributes and handles juror questionnaires."

Miller sent a letter on April 23, 2001 to Judge Wine, Vize, McCubbins, and others highlighting that these duties were not being performed. Specifically, she stated: "As you know, for over 20 years, the Court Administrators in Jefferson County have not performed these duties assigned by AOC."

### b. *Miller's complaint regarding the loss of privately donated funds*

On April 19, 2001, Miller sent an email message to over 35 recipients, including Judge Wine, the AOC, and the judges of Jefferson County. The substance of this email—titled "Loss of funding for new orientation video"—is set forth below:

> In February, 1999, I applied for grant money from the Louisville Bar and Kentucky Bar Foundations for the purpose of updating our jury orientation film. Several other people put a lot of time and effort into securing money for this project, including former Chief Circuit Judge Jeff Morris, Chief District Judge Bill Ryan, Judge William Knopf, Dan Goyette, Creighton Mershon, Bill Schneider and others.
>
> We were awarded money from both Foundations (as a joint venture) in spring of 1999. Unfortunately, the timing coincided with the loss of staff in our office which left us critically understaffed for over a year. In September we were assigned a clerk but our staffing shortage continues today due to the workload has more than doubled. [sic] Without automation and no additional staff assigned to this office since 1977, we are barely able to "keep our heads above water," much less find the time to devote to this project as well as other projects to sustain our office.

I have documented several times, when requesting help, my concern about the possibility of losing our funding because of not being able to proceed with the project.

Regrettably, the Kentucky Bar Foundation has asked that the money be returned.

\* \* \*

If AOC can provide any assistance to Jefferson County in remedying our problem, it would be greatly appreciated.

Thank you.

### 3.     *Miller's termination*

In response to Miller's April 19, 2001 email, Judge Wine asked that Vize contact the AOC in order to ascertain what procedures were necessary to terminate Miller. Vize contacted three individuals: Kevin Smalley, an attorney for the AOC; Cicely Lambert, the AOC Director and former General Counsel; and Rita Cobb, the AOC Personnel Director. All three individuals advised Vize that Miller was a nontenured employee.

Judge Wine testified that, in the months prior to Miller's sending this email, he was already having "problems" with Miller. These problems had caused Wine to consult Smalley, Lambert, and Cobb about the proper procedures to terminate Miller. Wine also discussed these problems with Kentucky Supreme Court Justice Martin Johnstone. Wine testified that "[t]he decision to terminate Ms. Miller was made prior to receiving that e-mail from her. We were in the process of working with the AOC, COJ, to determine what needed to be said, how the letter needed to read, and those discussions had finished a week prior." As to whether the email influenced the decision to fire Miller, Wine said that "[i]t didn't help her cause."

On April 24, 2001, Judge Wine called Miller into his chambers. He gave Miller the option of resigning or being terminated. Miller refused to resign, so Wine fired her. In a letter dated the same day, Wine explained his reasons for firing Miller. He first recognized that Miller had raised concerns about staffing issues in the jury-pool office, but reiterated his disagreement with her assessment that they truly needed more staff. Several corrective measures had already been implemented, even some suggested by Miller herself, but to the extent that any further workforce issues remained, Wine concluded that better time management by Miller herself would have solved the problem. Despite "repeated attempts to help," Wine wrote in his termination letter, Miller "continued to display conduct that is unprofessional and inappropriate, resulting in a very negative influence on morale and the operations of the office." He also stated that Miller had "been hostile and argumentative and displayed insubordinate behavior to [her] immediate supervisor, Mr. Vize." For these reasons, Wine concluded that he was "compelled to present [Miller] with th[e] letter of termination effective immediately."

## B.     Procedural background

Miller's original complaint set forth claims against the AOC, Vize in both his official and individual capacities, and Chief Judge Wine in his official capacity only. The complaint was later amended to account for the fact that Judge Wine was replaced by Judge Shake as chief judge of the Jefferson County Circuit Court. Miller thus alleged claims against the AOC, Vize in both his official and individual capacities, Judge Wine in his individual capacity, and Chief Judge Shake in his official capacity. Miller later moved to amend her complaint for a second time, but this motion was denied. This denial is discussed in more detail below, in response to one of Miller's claims on appeal.

On the basis of Eleventh Amendment immunity, the district court dismissed the claims against Vize in his official capacity, Judge Shake in his official capacity, and against the AOC, except to the extent that Miller requested prospective, injunctive relief. In the final order entered by the district court, however, Miller's complaint was "completely dismissed" without further explanation.

The district court separately addressed Miller's claims under 42 U.S.C. § 1983 against Vize and Judge Wine in their individual capacities. According to the court, Miller failed to allege a violation of her First Amendment free-speech rights, therefore entitling Vize and Wine to qualified immunity on that claim. With respect to her due process claim, the district court assumed that Miller had a property interest in her job and that she was terminated without proper notice and a hearing. The district court nevertheless held that Vize and Wine were entitled to qualified immunity because their decision to terminate Miller was reasonable given the advice they received when they investigated whether she could be terminated as an at-will employee. Summary judgment was therefore entered in the defendants' favor on these constitutional claims.

Finally, with respect to Miller's Whistleblower Act claim against Vize and Judge Wine in their individual capacities, the district court concluded that Miller failed to state a viable claim. The Act, according to the court, protects employees against retaliation for the good faith reporting of suspected violations of the law or administrative regulations. Miller's complaints did not involve this type of protected information. Summary judgment was therefore entered in the defendants' favor on the state-law claims as well.

Miller raises three issues on appeal: (1) whether the district court erred in concluding that Vize and Judge Wine were entitled to qualified immunity on her free-speech and due process claims, (2) whether the district court erred in denying Miller's request to amend her complaint for the second time, and (3) whether the district court erred in granting summary judgment to Vize and Judge Wine on Miller's Whistleblower Act claim.

Miller does not challenge on appeal the district court's dismissal of her claims against the officials for prospective relief even though the district court never provided any reasons for dismissing these potentially meritorious claims. Furthermore, she never discusses the dismissal of her claims for prospective relief in her opening brief. This court has held that issues are waived when "not raised in the appellant's opening brief." *Bickel v. Korean Air Lines Co.*, 96 F.3d 151, 153 (6th Cir. 1996); *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 403 n.18 (6th Cir. 1999) (en banc) (holding that issues not presented in an opening brief are waived). Any argument that Miller has in this regard is therefore waived.

## II. ANALYSIS

### A.        Standard of review

We review de novo a district court's grant of summary judgment. *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006). Summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

**B.          The law of qualified immunity**

In determining whether a law enforcement officer is shielded from civil liability due to qualified immunity, this court typically employs a two-step analysis: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). This court occasionally considers a third step in the qualified immunity analysis, in addition to the two steps listed above. *See Estate of Carter*, 408 F.3d at 310 n.2 ("Panels of this court occasionally employ a three-step qualified immunity analysis, as opposed to the two-step analysis set forth here. . . . [B]oth the two-step approach and the three-step approach can be said to capture the holding of [*Saucier*].") (citations omitted). When utilized, this third step requires an inquiry into "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004) (citation and quotation marks omitted).

The Supreme Court since *Saucier* has continued to use the two-step approach to qualified immunity, but this court has noted that "the three-step approach may in some cases increase the clarity of the proper analysis." *See Estate of Carter*, 408 F.3d at 311 n.2. If, on the other hand, the case at issue "is one of the many cases where, if the right is clearly established, the conduct at issue would also be objectively unreasonable," then this court has "collapse[d] the second and third prongs" in an effort to "avoid duplicative analysis." *Caudill v. Hollan*, 431 F.3d 900, 911 n.10 (6th Cir. 2005). Throughout the analysis, the burden is on Miller to show that the individual defendants are not entitled to qualified immunity. *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) ("Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity.").

On appeal, Miller challenges the district court's grant of summary judgment on the basis of qualified immunity with respect to her First Amendment claim and her claim that she was denied due process in the manner that she was terminated. These arguments will be addressed in turn.

**C.          Miller's First Amendment claim**

In order to make out a prima facie case that she was terminated in retaliation for engaging in speech protected by the First Amendment, Miller must show: (1) that she "engaged in constitutionally protected speech"—that is, "that her speech touched on matters of public concern," (2) that she "was subjected to an adverse action or was deprived of some benefit," and (3) that "the protected speech was a substantial or a motivating factor in the adverse action." *Banks v. Wolfe County Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003) (citations and quotation marks omitted). The district court did not consider the second and third elements because it concluded that Miller had not engaged in constitutionally protected speech.

"Whether a plaintiff's speech addressed a matter of public concern is a question of law, requiring *de novo* review by an appellate court." *Barnes v. McDowell*, 848 F.2d 725, 733 (6th Cir. 1988). The Supreme Court has stated that "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). In *Connick*, the Court went on to warn that not all criticisms of office-related matters by government employees involve matters of public concern:

> To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case. While as

a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.

*Id.* at 149.

We agree with the district court's conclusion that Miller's speech did not involve a matter of public concern. The April 19, 2001 email is the only speech that Miller identified in her complaint as being protected by the First Amendment. The email complained of a loss of funding for a new juror-orientation video. Miller attributed this loss to an unremedied lack of staff, and asked whether the AOC could provide assistance in that regard. This is not a case like *Banks* in which the speech at issue dealt with the failure to follow hiring policies and with alleged violations of state law, matters that "could affect the community and therefore touch upon matters of public concern." *Banks*, 330 F.3d at 897. Miller's complaints, in contrast, centered around a shortage in staffing and the lost opportunity to utilize privately donated funds. We agree with the district court that "[t]o constitutionalize this speech into a matter of public concern would both cheapen the First Amendment and turn almost every e-mail about government office operations into [a] constitutional case[]."

Because we conclude that Miller's email did not involve matters of public concern, there is no need to balance her interests in speaking freely against the interests of the state. *Banks*, 330 F.3d at 892-93 ("If a plaintiff's speech does not address a matter of public concern, no further inquiry is necessary."). The district court's dismissal on qualified immunity grounds was therefore proper. *See Estate of Carter*, 408 F.3d at 310-11 (citing *Saucier*, 533 U.S. at 201) (describing the qualified immunity analysis).

## D.     Miller's due process claim

### 1.     *Whether, considering the allegations in a light most favorable to Miller, a constitutional right has been violated*

The first step in analyzing this claim is to determine whether Miller had an interest that was protected by the Due Process Clause. In order to be entitled to a due process hearing prior to her termination, Miller must prove that "she enjoyed a property interest in her position" as jury-pool manager. *See Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 141 (6th Cir. 1997) (finding that Bailey was a nontenured employee and therefore not entitled to a due process hearing prior to termination). Miller would not be entitled to "any pre-deprivation process whatsoever" in the absence of a property interest in her position. *See id.*

If Miller can demonstrate such a property interest, however, the second step in analyzing this claim is to determine whether Miller was afforded her due process rights prior to termination. That is, was she afforded the procedures to which government employees with a property interest in their jobs are "ordinarily entitled," including "pre-deprivation notice of the charges, an explanation of the employer's evidence, and an opportunity to present their account of the events"? *See id.* The defendants concede that no such procedures were followed when terminating Miller, so the real issue is whether she was entitled to the procedures in the first place.

In order to determine whether Miller had a property interest in her job, reference must be made to Kentucky law. *See id.* ("The existence of a property interest depends largely on state law."). Kentucky law requires that a person be more than an at-will employee in order to have a property interest in her job. *Id.* ("An at-will employee is subject to dismissal at any time and without cause; consequently, an at-will employee cannot effectively claim a protectable property interest in his or her job."). Miller therefore has to show that she was a tenured employee, as opposed to a nontenured, at-will employee.

The district court found that a "resolution of this difficult issue was unnecessary to the disposition" of the various motions for summary judgment. To the contrary, the district court should have resolved this preliminary issue before proceeding to the second step of the qualified immunity analysis. *See Saucier*, 533 U.S. at 201 ("[I]f a [constitutional] violation could be made out on a favorable view of the parties' submissions, the *next*, *sequential step* is to ask whether the right was clearly established.") (emphasis added). Although we could remand the case in order for the district court to determine this issue, we will proceed to make the determination ourselves in light of the completeness of the record and in the interests of judicial economy. *See Beaty v. United States*, 937 F.2d 288, 291 (6th Cir. 1991) (stating in a case where an issue was not decided below that "the record is complete, and it would be a waste of everyone's time to remand to the district court what can be decided now as a matter of law").

There was conflicting evidence as to whether Miller was tenured or nontenured. The Chief Judge who hired Miller said that the position was tenured in order to provide stability. Miller's job titles — jury-pool manager and professional-services supervisor — do not appear in the list of exceptions from the tenured-employee rules, seeming to indicate that she was in fact tenured. She also served a probationary period, a requirement only for tenured employees. (The defendants, however, call this a "mistake.") Finally, Miller claims that her annual pay increment was inconsistent with the COJ policies regarding nontenured employees.

On the other hand, Miller's original appointment letter said that she was "to serve at the pleasure of the Court." The defendants also contend that Miller *is* covered by an enumerated exception to the tenured-employee policies—the general job classification of "trial court administrator"—that allegedly encompassed her actual job duties. Finally, Miller has conceded that she is not a "classified" or "merit" employee under the Kentucky statute that describes the tenured versus nontenured status of public employees. Ky. Rev. Stat. § 18A.095(3). (But Miller argues that such a concession is not determinative of whether she is, in fact, tenured.)

Construing the conflicting evidence in Miller's favor, as we must for summary judgment purposes, a genuine issue of material fact exists as to her status as a tenured employee. Because the defendants concede that Miller was not given any notice or a hearing prior to her termination, we conclude that Miller has satisfied her burden in the first stage of the qualified immunity analysis. *See Bailey*, 106 F.3d at 141 (setting forth the method of analyzing a due process claim); *Estate of Carter*, 408 F.3d at 310-11 (citing *Saucier*, 533 U.S. at 201) (describing the qualified immunity analysis).

### 2. *Whether, considering the allegations in a light most favorable to Miller, her termination violated a "clearly established" constitutional right*

The second step of the qualified immunity analysis is to determine whether the constitutional right that was violated was "clearly established." *Estate of Carter*, 408 F.3d at 310-11 (citing *Saucier*, 533 U.S. at 201). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

In this case, Administrator Vize and Judge Wine conducted a pre-termination investigation into Miller's status to determine whether any special procedures needed to be followed in order to lawfully terminate her. The advice they received from the AOC's Director, its attorney, and its Personnel Director was consistent—that Miller was a nontenured employee. Given this information, a reasonable officer would not have clearly known that terminating Miller without the procedures required only for tenured employees was unlawful. This is not a case where the official responsible for terminating a government employee was "plainly incompetent" or "knowingly violat[ed] the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (stating that as the "qualified immunity defense

has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law"). Rather, Vize and Wine took precautionary measures to ensure that Miller was nontenured and, whether or not she was in fact nontenured, those precautionary measures, under the circumstances, rendered reasonable their decision to terminate Miller without a hearing.

Furthermore, even if we were to conclude that Miller had met her burden in the second step of the qualified immunity analysis, we would still hold that Vize and Judge Wine are entitled to qualified immunity under the third step that this court occasionally employs. The decision to terminate Miller was simply not "objectively unreasonable" based on the information Vize and Wine had received in their pre-termination investigation. *See Champion*, 380 F.3d at 901.

**E.      Miller's claim under the Kentucky Whistleblower Act**

Miller's other claim relates to the concern that she expressed to several court officials about "fraud, waste, and mismanagement in the conduct of the Chief Court Administrator Tim Vize and the Court Administrator Roger McCubbins." According to Miller, both Vize and McCubbins were being paid for performing duties related to the jury pool, but that in fact they had never performed these duties. Miller alleges that Judge Wine's decision to terminate her was "a direct result" of her expressing these concerns, and that Vize conspired in her termination, all in violation of the Kentucky Whistleblower Act.

Although Miller extensively briefed her claim that Vize and Judge Wine had violated the Whistleblower Act, she failed to address the fact that the Kentucky Supreme Court recently held that the Act does not impose individual civil liability. *Cabinet for Families & Children v. Cummings*, 163 S.W.3d 425, 434 (Ky. 2005) ("[T]he language of KRS 61.101(2) does not impose individual civil liability under Kentucky's Whistleblower Act for reprisal against public employees of the Commonwealth and its political subdivisions."). Miller's claims against Vize and Wine in their individual capacities are therefore precluded by *Cummings*. In sum, we affirm the dismissal of Miller's state-law claim on this alternative ground, and do not reach the question of whether she in fact stated a claim under the Act.

**F.      Miller's request to amend her complaint for the second time**

Miller's original complaint was filed in June of 2001. In May of 2002, the district court allowed her to file her first amended complaint, which substituted the new chief judge as a named party and added a claim against the former chief judge in his individual capacity. No substantive changes were made to the allegations in the original complaint.

In August of 2002, Miller filed a motion for leave to file a second amended complaint. The proposed amendment added 23 additional factual allegations in support of the claim that her First Amendment rights were violated. These new allegations set forth "concerns" that Miller allegedly shared with county officials "relating to the management and operations of the Jury Pool Office." In October of 2002, the district court denied Miller's request "pending resolution of the qualified immunity issues."

The district court's decision to deny Miller's motion to amend her complaint is subject to the abuse-of-discretion standard of review. *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) ("We review a district court's order denying a Rule 15(a) motion to amend for an abuse of discretion."). Miller argues that the district court's failure to provide any reason for denying her request constituted a per se abuse of discretion, citing the Supreme Court's decision in *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court in *Foman* stated that the "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Id.*

The defendants dispute Miller's interpretation of *Foman*, emphasizing that the reasons need only be *apparent*, not necessarily explicitly stated.  This reading finds support in the caselaw of this circuit.  *See, e.g., Duchon v. Cajon Co.*, 791 F.2d 43, 48 (6th Cir. 1986) ("Where, as here, the reason for denial is readily apparent it is within the court's discretion to so deny without further explanation."); *Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 971 (6th Cir. 1973) ("[W]e note that the better practice is for a district court to state reasons for its denial of a motion to amend.  However, . . . when reasons are readily apparent it is not per se an abuse of discretion to omit them.").  In this case the reasons for the denial of Miller's motion to amend were readily apparent in the record.

The procedure to file an amended complaint is set forth in Rule 15(a) of the Federal Rules of Civil Procedure.  Where, as here, the defendants had already responded to the original complaint, the plaintiff can amend only by leave of the court.  Rule 15(a) provides, however, that such "leave shall be freely given when justice so requires."  In *Perkins v. American Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001), this court listed several factors to consider in order to decide whether to allow an amendment: "the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment."

The final deadline set by the district court for discovery on the issue of qualified immunity was August 6, 2002, and had expired approximately two weeks before Miller moved to amend her complaint for a second time.  In addition, the deadline for filing dispositive motions on the issue of qualified immunity— September 6, 2002—had nearly passed when Miller filed her motion, and had long passed by the time the district court denied Miller's request.

Because the discovery deadline had already passed and the deadline for filing dispositive motions on the issue of immunity was imminent, the defendants would have been prejudiced if a further amendment had been permitted by the district court.  *See Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) ("At least one Sixth Circuit decision has held that allowing amendment after the close of discovery creates significant prejudice, and other Circuits agree.") (citations omitted).  Miller, moreover, offered no justification for the 14-month delay between the filing of her original complaint and her moving to add the additional allegations on her First Amendment claim, which militates against the allowance of an amendment.  *Id.* (noting, in support of its conclusion that the plaintiff was not entitled to amend the complaint, that "[t]here appears to be no justification for the delay, and the plaintiff proposes none").  Because these reasons were readily apparent, the district court's denial of the request to amend the complaint did not constitute an abuse of discretion.  *See Troxel Mfg. Co.*, 489 F.2d at 971; *Duchon*, 791 F.2d at 48.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.