Beverly L. MILLER, Appellant,

v.

ADMINISTRATIVE OFFICE OF
the COURTS, Appellee.

Nos. 2007–SC–000609–TG.

Supreme Court of Kentucky.

Dec. 22, 2011.

Rehearing Denied April 26, 2012.

Thomas E. Clay, Clay, Frederick, Adams, PLC, Louisville, KY, Counsel for Appellant.

Cynthia Blevins Doll, Fisher & Phillips, LLP, Lisa Catherine Dejaco, Wyatt, Tarrant & Combs, LLP, Louisville, KY, Counsel for Appellee.

Opinion of the Court by Special Justice JOHN T. McGARVEY.

This matter is before the Court on transfer from the Court of Appeals of an appeal of the decision of the Jefferson Circuit Court in an action brought by an employee of the Court of Justice alleging violation of her due process rights and of the state's whistleblower statute in the termination of her employment in the Jefferson Circuit Court Clerk's Office. Appellant, Beverly L. Miller ("Miller"), appeals from the Order of the Jefferson Circuit Court dismissing her claims against the Administrative Office of the Courts as being barred under the doctrine of res judicata because the issues in question had already been decided in federal court. We reverse the decision of the Jefferson Circuit Court dismissing Miller's claims, and remand to the Jefferson Circuit Court for further proceedings consistent with this Opinion.

## I. Background

Miller was employed in the Jefferson Circuit Court Clerk's office, first as the "Jury Pool Manager" and later as the "Professional Services Supervisor." Her employment was terminated in 2001. The specific facts leading up to her termination are not necessary to resolution of this matter, but they are recounted in the various opinions rendered by the federal courts that originally heard her causes of action. *See Miller v. Admin. Office of the Courts*, No. Civ. A. 3:01 CV–339–S, 2005 WL 1244988 (W.D.Ky. May 23, 2005) (memorandum opinion), *aff'd*, 448 F.3d 887 (6th Cir.2006); *Miller v. Admin. Office of the Courts*, No. Civ. A. 3:01 CV–339–S (W.D.Ky. June 23, 2004) (memorandum opinion); *Miller v. Admin. Office of the Courts*, No. Civ. A. 3:01 CV–339–S, 2001 WL 1792453 (W.D.Ky. Sept. 11, 2001) (memorandum opinion).

After her termination, Miller filed suit in the United States District Court for the Western District of Kentucky alleging various causes of action, including violation of her due process rights under the Fifth and Fourteenth Amendments of the United States Constitution, violation of her free speech rights, and, by pendant jurisdiction, a violation of Kentucky's whistleblower statute, KRS 61.102 *et seq.* The original defendants in that action included the Administrative Office of the Courts ("AOC"), which is the administrative agency of the Court of Justice; Tim Vize ("Vize"), the Chief Court Administrator for the Jefferson Circuit Court and Appellant's supervisor, in both his individual and official capacities; and the Hon. Tom Wine, Chief Judge of the Jefferson Circuit Court, also in his individual and official capacities ("Judge Wine"). After Judge Wine's term as Chief Judge ended, Miller also named

his replacement, Judge James Shake ("Judge Shake"), in his official capacity.

The AOC was dismissed from the district court action on Eleventh Amendment sovereign immunity grounds. *See Miller v. Admin. Office of the Courts*, No. Civ. A. 3:01CV–339–S, 2001 WL 1792453 (W.D.Ky. Sept. 11, 2001) (memorandum opinion). The claims against Vize, Judge Shake, and Judge Wine remained before the federal court at that time.

Once the AOC was finally dismissed as a party to the federal lawsuit, Miller filed a state court action against it (but none of the other federal defendants), alleging her termination violated both her due process rights under Section 14 of the Kentucky Constitution and Kentucky's whistleblower statute. The matter was held in abeyance in the Jefferson Circuit Court pending resolution of the federal action.

The federal district court later dismissed the federal law claims against Vize and Judge Wine in their official capacities on Eleventh Amendment grounds and in their individual capacities on the basis of qualified immunity, except to the extent prospective injunctive relieve was sought. *Miller v. Admin. Office of the Courts*, No. Civ. A. 3:01 CV–339–S (W.D.Ky. June 23, 2004) (memorandum opinion). As to the First Amendment claim, the court held that no constitutional violation had oc-

curred, *id.* slip op. at 9; as to the due process claim, the court held that the officials' decisions had been reasonable, *id.* slip op. at 11. The state law claims against them remained pending, as did the federal claim against Judge Shake. Those claims, too, were finally dismissed in 2005, the federal claims against Judge Shake on Eleventh Amendment grounds and the state law claims against Vize and Judge Wine in part on Eleventh Amendment grounds (i.e., their official capacities) and in part on the merits (i.e., their individual capacities). *See Miller v. Admin. Office of the Courts*, No. Civ. A. 3:01 CV–339–S, 2005 WL 1244988 (W.D.Ky. May 23, 2005) (memorandum opinion).[1] The decision of the district court was affirmed by the Sixth Circuit in *Miller v. Administrative Office of the Courts*, 448 F.3d 887 (6th Cir.2006).[2]

When the dismissal of Miller's claims in the federal action became final, the AOC moved for dismissal in the state court of Miller's whistleblower and state due process claims based on the theory that res judicata serves as a bar to the state court action. By Order of July 2, 2007, the Jefferson Circuit Court sustained the AOC's motion on the grounds of res judicata. The decision of the Jefferson Circuit Court found that the decisions of the federal district court dismissing the action initiated by Miller against the AOC were

---

1. Though the memorandum opinion did not mention the then remaining claims for prospective relief, it appears that the separate order "completely dismissed" Miller's complaint, so as to also dismiss all claims for prospective relief. *See Miller v. Admin. Office of Courts*, 448 F.3d 887, 892 (6th Cir.2006).

2. Despite Miller's statement otherwise, the Sixth Circuit did not rule on any issues related to the AOC, at least not in *Miller v. Admin. Office of the Courts*, 448 F.3d 887 (6th Cir. 2006). That decision reviewed only the district court's dismissal of the federal and state law claims against Vize and Judge Wine in

their individual capacities. *See id.* at 893 ("Miller raises three issues on appeal: (1) whether the district court erred in concluding that Vize and Judge Wine were entitled to qualified immunity on her free-speech and due process claims, (2) whether the district court erred in denying Miller's request to amend her complaint for the second time, and (3) whether the district court erred in granting summary judgment to Vize and Judge Wine on Miller's Whistleblower Act claim."). Apparently, no appeal of the decision as to the AOC was sought.

grounded on the same facts as the action she brought in the Jefferson Circuit Court, which precluded the state court action.

This Court accepted transfer of the case to decide whether the trial court was correct in concluding that res judicata and related doctrines barred the state court action.

## II. Analysis

### A. The Law of Res Judicata: Claim Preclusion and Issue Preclusion

 The doctrines of res judicata and issue preclusion must both be examined in this case. Before turning to the requirements of the doctrines, it is first necessary to clarify what we mean by the various terms used for the doctrines. Res judicata is also known as claim preclusion. The doctrine prohibits the relitigation of claims that were litigated or could have been litigated between the same parties in a prior action. Issue preclusion, also known as collateral estoppel, is a related doctrine. It allows the use of an earlier judgment by one not a party to the original action to preclude relitigation of matters litigated in the earlier action. Though technically different doctrines, the terms res judicata and collateral estoppel (and claim and issue preclusion) are sometimes used interchangeably.

Res judicata, being the older term, is also sometimes thought of as an umbrella doctrine that contains within it both claim and issue preclusion. *See, e.g., Yeoman v. Com., Health Policy Bd.*, 983 S.W.2d 459, 464–65 (Ky.1998) ("The doctrine of res judicata is formed by two subparts: 1) claim preclusion and 2) issue preclusion."). Claim preclusion "is synonymous with *res judicata* in its strict sense." Bryan A. Garner, *A Dictionary of Modern Legal Usage* 159 (2d ed.1995). Nevertheless, the term "claim preclusion" is often preferable to the term "res judicata," if only for the sake of clarity and to use a term that parallels "issue preclusion." *See, e.g., Yeoman*, 983 S.W.2d at 465 n. 2 ("In this opinion we employ the term claim preclusion to refer to the doctrine which bars subsequent litigation of a cause of action which has previously been adjudicated. The term issue preclusion is employed to refer to the doctrine which prohibits issues which were adjudicated in a previous lawsuit from being relitigated in a subsequent lawsuit. Res judicata is the Latin term which encompasses both issue and claim preclusion and is not to be used as synonymous with either individually, but rather equally with both. Collateral estoppel is a term used by some to refer to issue preclusion, but for simplicity's sake, we shall not use it in this opinion."); *see also* Allen D. Vestal, *The Constitution and Preclusion/Res Judicata*, 62 Mich. L.Rev. 33, 33–34 (1963–64) (urging use of the terms claim and issue preclusion). As used below, especially in quotations from earlier decisions, res judicata is used primarily to mean claim preclusion.

 Res judicata, in the sense of claim preclusion, "is basic to our legal system and stands for the principle that once rights of the parties have been finally determined, litigation should end." *Slone v. R & S Mining, Inc.*, 74 S.W.3d 259, 261 (Ky.2002). Or as the term has been more thoroughly defined:

> "[T]he doctrine of res judicata prevents the relitigation of the same issues in a subsequent appeal and includes every matter belonging to the subject of the litigation which could have been, as well as those which were, introduced in support of the contention of the parties on the first appeal."

*Huntzinger v. McCrae*, 818 S.W.2d 613, 615 (Ky.App.1990) (quoting *Burkett v. Board of Ed. of Pulaski County*, 558

S.W.2d 626, 627–28 (Ky.App.1977)) (alteration in original). The very purpose of the doctrine of res judicata is to preclude repetitious actions. *Harrod v. Irvine*, 283 S.W.3d 246, 250 (Ky.App.2009). Three elements must be met for the rule to apply: (1) there must be an identity of parties between the two actions; (2) there must be an identity of the two causes of action; and (3) the prior action must have been decided on the merits. *Id.*

■■■ Res judicata, again in the strict sense of claim preclusion, is a similar but necessarily distinct doctrine from issue preclusion. "[A] close cousin to the doctrine *res judicata* is the theory of collateral estoppel, or issue preclusion." *Moore v. Commonwealth*, 954 S.W.2d 317, 318 (Ky. 1997). The doctrine of issue preclusion is properly asserted by "a person who was not a party to the former action nor in privity with such a party." *Id.* at 319 (quoting *Sedley v. City of West Buechel*, 461 S.W.2d 556, 559 (Ky.1970)). Such a non-party

> may assert res judicata *against* a party to that [former] action, so as to preclude the relitigation of an issue determined in the prior action. The rule contemplates that the court in which the plea of res judicata is asserted shall inquire whether the judgment in the former action was in fact rendered under such conditions that the party against whom res judicata is pleaded had a realistically full and fair opportunity to present his case.

*Id.* (quoting *Sedley v. City of West Buechel*, 461 S.W.2d 556, 559 (Ky.1970)). In order for issue preclusion to operate as a bar to further litigation, certain elements must be met: (1) at least one party to be bound in the second case must have been a party in the first case; (2) "the issue in the second case must be the same as the issue in the first case"; (3) "the issue must have been actually litigated"; (4) "the issue was

actually decided in that action"; and (5) "the decision on the issue in the prior action must have been necessary to the court's judgment" and adverse to the party to be bound. *Yeoman; see also Moore*, 954 S.W.2d at 319; *Stemler v. Florence*, 350 F.3d 578 (6th Cir.2003).

The difference, and interrelation, between claim preclusion (i.e., res judicata) and issue preclusion (i.e., collateral estoppel) is best summed up as follows:

> Claim preclusion bars a party from relitigating a previously adjudicated cause of action and entirely bars a new lawsuit on the same cause of action. Issue preclusion bars the parties from relitigating any issue actually litigated and finally decided in an earlier action.... The key inquiry in deciding whether the lawsuits concern the same controversy is whether they both arise from the same transactional nucleus of facts. If the two suits concern the same controversy, then the previous suit is deemed to have adjudicated every matter which was or which could have been brought in support of the cause of action.

*Yeoman v. Commonwealth*, 983 S.W.2d 459, 464–65 (Ky.1998) (footnote and internal citations omitted).

■■■ Res judicata or claim preclusion is applicable to the same parties to the prior litigation or appeal. *Godbey v. Univ. Hosp. of the Albert B. Chandler Med. Ctr. Inc.*, 975 S.W.2d 104, 105 (Ky.App.1998). When a person wishes to prevent the litigation of the same issues but was not a party to the prior litigation, the courts may apply the doctrine of issue preclusion. *Yeoman*, 983 S.W.2d at 465. Under the doctrine of issue preclusion the parties do not have to be identical in each action. "[A] party is bound by a prior adjudication against it on an issue if the prior issue was an essential component of that action, even though the parties were not completely

identical in each action." *Jellinick v. Capitol Indem. Corp.*, 210 S.W.3d 168, 171 (Ky.App.2006).

## B. Claim and Issue Preclusion Applied to Miller's Claims

Miller argues that her whistleblower claim and her state due process claim were both improperly dismissed by the trial court. Miller's whistleblower claim is predicated upon the acts of officers and employees of the Court of Justice, which uses the AOC as its administrative agency. Although the AOC, as a division of Kentucky state government, was dismissed from the federal action under Eleventh Amendment immunity, the officers and employees of the Court of Justice, in their individual capacities, remained before the federal court.

Because the AOC was no longer a party to the action, having been dismissed, it is questionable whether the doctrine of claim preclusion, which requires identity of the parties, is applicable here. This is an important issue because claim preclusion, in addition to barring claims that were litigated, also applies to bar claims that could have been brought in the former action (unlike issue preclusion). This is "the rule against splitting causes of action." *Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366, 371 (Ky.2010).

Though the whistleblower claim was brought in the federal action, the state constitutional due process claim was not. The AOC argues that claim preclusion should apply because it was in privity with Vize and Judge Wine, and thus was effectively a party to the original action. The AOC even argues that Miller concedes this point, but that she tries to evade its effect by arguing instead that because the claims at the end were against Vize and Judge Wine in their individual capacities, there was an insufficient identity of interest with the AOC to allow claim preclusion.

 To the extent that Miller's present claims are against the AOC, they fit under a narrow exception to the doctrine of claim preclusion, even if the AOC were in privity with Vize and Judge Wine. That doctrine's rule against splitting causes of action will not apply where

> [t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts ... and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief.

Restatement (Second) of Judgments § 26(1)(c) (1982); *see also Cream Top Creamery v. Dean Milk Co.*, 383 F.2d 358, 363 (6th Cir.1967) (holding that "when the first forum lacks the ability to give the relief sought in the second forum" because of exclusivity of jurisdiction, claim preclusion is no bar).[3]

That is exactly what happened here to Miller's original claims against the AOC. The federal court dismissed those claims

**3.** Though we have not previously applied this specific exception to claim preclusion, we have cited Section 26 of the Restatement with approval generally. *See, e.g., Coomer,* 319 S.W.3d at 371. We agree that the exception in subsection (1)(c) is an appropriate limit on the equitable doctrine of claim preclusion. Arguably this rule conflicts with *Kirchner v. Riherd,* 702 S.W.2d 33, 34 (Ky.1985), which held that a plaintiff cannot bring part of a claim in small claims court and later seek to bring part of the claim in circuit court under the rule against splitting causes of action. That case is distinguishable insofar that the plaintiff in that case *chose* to split his causes of action, whereas Miller did not. (We do not address whether the rule in *Kirchner* is or even should be altered when applied to facts similar to those in that case.)

for lack of subject matter jurisdiction under the Eleventh Amendment. Miller was thus "unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts." Restatement (Second) of Judgments § 26(1)(c) (1982). As such, the AOC cannot now plead claim preclusion to bar those claims that could have been brought in the federal action. Instead, issue preclusion is the relevant doctrine that this court must seek to apply. *See* Restatement (Second) of Judgments § 26 reporter's note on cmt. c (1982) (noting that issue preclusion can still apply in such situations); *Cream Top Creamery*, 383 F.2d at 363 (holding same).

Miller's counsel was queried by this Court during oral argument specifically as to what issue had not been resolved in the federal proceedings that were brought, or could have been brought through pendent jurisdiction, in the federal action. He cited only Miller's state due process claim against AOC under the Kentucky Constitution, and did not mention the whistleblower claim. However, the viability of Miller's whistleblower claim was raised in her brief, which requires us to also address whether that claim also falls under the issue preclusion bar.

### 1. The State Due Process Claim

The AOC argues that Miller's due process claim was adjudicated and is thus barred by issue preclusion, that the AOC enjoys sovereign immunity even from due process claims, and that if Miller should have been afforded a due process hearing, her conduct would have justified termi-

nation and the doctrine of futility obviates the requirement for a hearing.[4] We disagree.

First, there is some question whether a federal court's decision on the merits of a federal due process claim (e.g., that there is no federally protected property interest) can preclude a *state* constitutional due process claim. Issue preclusion requires the issue decided in the earlier litigation be the *same* as the one currently before the court. Arguably, federal due process, while no doubt similar, is a different issue than state due process. *See, e.g., Straub v. St. Luke Hosp., Inc.,* No. 2007–CA–000443–MR, 2008 WL 5264284, *15 (Ky. App. Dec. 19, 2008) (declining to treat federal decision on federal due process claim as preclusive of state due process claim), *rev'd on other grounds,* 354 S.W.3d 529 (Ky.2011). We need not resolve this element of issue preclusion, however, because the doctrine is inapplicable to the due process claim for other reasons, specifically, that the federal court did not decide the issue on the merits.

Judge Simpson, in the federal action, addressed but did not rule on Miller's federal due process claims. Noting "[m]uch discussion and argument regarding Miller's property interest in her position at the time of her termination," Judge Simpson concluded that "resolution of this difficult issue [was] unnecessary to disposition of the motions before the Court." *Miller v. Administrative Office of the Courts,* No. 3:01 CV 339–S, slip op. at 10 (W.D.Ky. June 23, 2004) (memorandum opinion). Although he further found that "[i]t appears to be a close question as to whether a protected property interest ex-

---

4. The futility argument is based on the "not objectively unreasonable" finding of Judge Simpson that is limited to the issue of qualified immunity of the individual defendants in the handling of Miller's termination, not the claim pending before the state court of alleged violation of Miller's right of hearing and due process under the administrative procedures of the AOC.

isted, ... considering the steps taken by the defendants to determine Miller's tenured or non-tenured status we find that terminating her without any process was not objectively unreasonable." *Id.* This finding specifically noted that it related only to qualified immunity of the individual defendants. Judge Simpson's opinion did not adjudicate the issue of whether "a constitutional violation of a clearly established right occurred," *id.,* and instead simply "[a]ssumed" that a due process violation occurred in order to decide the qualified immunity question, *id.*[5]

Although the Sixth Circuit disagreed with Judge Simpson's finding that resolution of Miller's status as a tenured or "at-will" employee of the AOC was "unnecessary to the disposition" of Miller's claims against Wine and Vize, it found the record below sufficiently complete to make its own determination so far as it relates to the issue of qualified immunity. *Miller,* 448 F.3d at 895–96. As to Judge Wine and Vize, it found "[t]he decision to terminate Miller was simply not 'objectively unreasonable' based on the information Vize and Wine had received in their pre-termination investigation." *Id.* at 897.

When the AOC was dismissed and removed from the federal case, and Judge Simpson specifically refrained from ruling on the due process issue, Miller's claim for violation of her due process rights was appropriately brought in the state action against the AOC.

Whether Miller's due process rights were violated turns largely on whether she had a property interest in her employment, which, in turn, depends on whether she was an at-will or tenured employee. Judge Simpson specifically declined to decide this issue, and the issue was not finally decided by the Sixth Circuit.[6] Thus, the merits of the federal due process claim were not decided by the federal court. As such, that court made no decision that could have issue preclusive effect on Miller's state due process claim.

That said, this Court cannot decide the merits of Miller's due process claim. There is no finding in the record below as to whether Miller was an at-will or tenured employee of the Court of Justice. If she was an at-will employee, she served at the pleasure of her appointing authority. If Miller occupied a tenured position with the Court of Justice, we agree that deprivation of that position without the benefit of the procedures to which similarly situated employees would normally be entitled could equate to a deprivation of Miller's property rights under the Kentucky Constitution. If Miller was a tenured employee of the Court of Justice, she is entitled to a due process hearing following the administrative procedures promulgated by the Kentucky Supreme Court.

To the extent that this claim is not barred by the doctrine of issue preclusion, or some other legal doctrine, it must be remanded to the circuit court for further proceedings. Before such a remand, however, this Court must first address the AOC's position that, even if Miller was a tenured employee entitled to a due process hearing, her due process claim is barred by sovereign immunity. The AOC supports its position by arguing that the Gen-

---

5. This stands in clear distinction to the decision about the alleged First Amendment violation. As noted above, Judge Simpson directly addressed whether a constitutional violation occurred, finding none.

6. The Sixth Circuit addressed the issue of her tenure only to the extent that the record showed the existence of a material issue of fact sufficient to avoid summary judgment. It did not decide whether she had tenure. *Miller,* 448 F.3d at 896.

eral Assembly has not allowed a due process claim to proceed in a Kentucky court and thereby waived immunity.

■ The fundamental right of due process cannot be trumped by sovereign immunity. The sovereign immunity afforded to a department of state government is not a grant of unbridled power. Miller's federal due process right prevails over a state's protection of sovereign immunity, even in state court. *See Alden v. Maine,* 527 U.S. 706, 755–56, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999); *Miller v. Johnson Controls, Inc.,* 296 S.W.3d 392, 397 (Ky. 2009) (citing *Alden*). The sovereign immunity that cloaks the Commonwealth and its various subdivisions and agencies, including the AOC, does not permit those agencies to avoid their binding administrative procedures that extend the fundamental right of due process to tenured employees. However, even due process has its limits. Thus, sovereign immunity insulates the Commonwealth from a damages claim by Miller arising from an alleged violation of her constitutional rights. *St. Luke Hosp., Inc. v. Straub,* 354 S.W.3d 529 (Ky.2011). Due process affords only prospective relief against the state.

### 2. The Whistleblower Claim

■ As to Miller's claim under the Kentucky whistleblower statute, Judge Simpson made several findings: "that Miller is unable to establish that she reported the type of information which is protected by the statute"; that "Miller's acts do not constitute disclosure or reports that are protected by the Whistleblower Act"; and "that Miller did not report concealed information" that would bring her report under whistleblower criteria. *Miller v. Administrative Office of the Courts,* No. CIV.A.3:01 CV 339–S, 2005 WL 1244988, at *2, *3 (W.D.Ky. May 23, 2005) (memorandum opinion), *aff'd,* 448 F.3d 887 (6th Cir.2006).

Judge Simpson's memorandum opinion was an *actual* decision on the merits of this issue because a whistleblower claim requires a showing that the plaintiff reported protected information. Further, Miller was a party to the federal action, the whistleblower claim was the same issue later brought in the state court action, the issue was fully litigated, the issue was decided, and the decision on the issue in the federal action was necessary to that court's judgment and was adverse to Miller. As such, all elements of the *Yeoman* test appear to be satisfied by that decision.

The decision was appealed, however. Although Judge Simpson's decision was affirmed by the Sixth Circuit, the basis of that court's decision stopped just short of meeting the test of *Yeoman.* Thus, the doctrine of issue preclusion was improperly applied to bar the whistleblower claim in the Jefferson Circuit Court.

When the Sixth Circuit dismissed Miller's whistleblower claims against Vize and Wine, in their individual capacities, it based its ruling not on Judge Simpson's findings that Miller did not state a claim under Kentucky's whistleblower protection statute, but instead it relied on this Court's decision in *Cabinet for Families & Children v. Cummings,* 163 S.W.3d 425, 434 (Ky.2005). (In *Cummings,* citing KRS 61.101(2), we held that employees of the Commonwealth and its political subdivisions do not have individual civil liability for violation of the whistleblower protection statute.) The *Cummings* decision had not been available to Judge Simpson. It was rendered only four days prior to his opinion of May 19, 2005, and was not yet final. The Sixth Circuit, sustaining Judge Simpson's opinion on the basis of our decision in *Cummings,* was not required to decide if Miller's conduct was protected by the whistleblower statute and specifically held: "we affirm the dismissal of Miller's

state law claims against *Vize* and Wine in their individual capacities on this alternative ground [*Cummings*], and do not reach whether she in fact states a claim under [the whistleblower statute]." 448 F.3d at 897.

Hence, one sub-part of one part of the *Yeoman* test was not satisfied by the decision of the Sixth Circuit. Judge Simpson's findings on whether Miller's conduct was protected by the whistleblower statute were not necessary to the opinion of the Sixth Circuit, which was instead based on *Cummings*.

This seemingly small point is critical because the merits of Miller's claims of whistleblower protection, even though addressed in findings by the federal district court, were never reviewed by the Sixth Circuit. The decision of the Sixth Circuit, which declined to rule on whether Miller's conduct was entitled to protected status, became the final opinion in the string of federal decisions. Because that opinion did not decide the *issue* raised in this case and the federal district court's decision on the issue was therefore not necessary to the outcome, the doctrine of issue preclusion cannot be used to bar the whistleblower claim in state court.

### III. Conclusion

The July 2, 2007 Order of the Jefferson Circuit Court dismissing Miller's claim founded on the potential violation of her due process rights under the Kentucky Constitution is reversed. There is nothing in the record below, or in the federal action, indicating that there has been a finding of whether Miller's position with the AOC was tenured or "at will," and if tenured whether she was afforded her rights under the administrative procedures of the AOC.

The July 2, 2007 Order of the Jefferson Circuit Court dismissing Miller's claim un-

der the Kentucky whistleblower statute on the basis of issue preclusion is reversed. The finding of the federal district court dismissing Miller's whistleblower claims was not necessary to the opinion of the Sixth Circuit that sustained the district court's dismissal of Miller's claim on other grounds, thus depriving the final decision of the federal courts of one of the required tests in order for issue preclusion to apply to the state court action.

This matter is therefore hereby remanded to the Jefferson Circuit Court for further proceedings in regard to Miller's status as a tenured employee entitled to due process protection afforded by the administrative policies of the AOC, and if she was a tenured employee, a finding of whether those policies were followed in regard to Miller's termination, and in regard to whether Miller reported information that would entitle her to protection under the Kentucky whistleblower statute.

CUNNINGHAM, NOBLE, SCHRODER, SCOTT, JJ., and Special Justice WILLIAM T. CAIN, concur. MINTON, C.J.; ABRAMSON and VENTERS, JJ., not sitting.