Harold MIRACLE, Jr.; and Amy
Brumbach, Appellants,

v.

BELL COUNTY EMERGENCY MEDI-
CAL SERVICES; Robert Bond,
Agent, Servant and Employee of the
Bell Fiscal Court; Robert Bond, Indi-
vidually; David Broughton, Agent,
Servant and Employee of Bell County
Fiscal Court; Bell County Fiscal
Court; Jennifer Jones; Andy
Williams; Bill Kelly; John Brock;
and Harold Gilbert, Appellees.

No. 2005–CA–002205–MR.

Court of Appeals of Kentucky.

July 27, 2007.

Rehearing Denied Oct. 8, 2007.

Phyllis L. Robinson, Manchester, KY, for Appellants.

Jason E. Williams, London, KY, for appellees Bell County Emergency Medical Services; David Broughton, Agent, Servant and Employee of Bell County Fiscal Court; Bell Fiscal Court; Jennifer Jones; Andy Williams; Bill Kelly; John Brock; and Harold Gilbert.

Edward H. Stopher, Matthew B. Gay, Louisville, KY, for appellee Robert Bond.

Before THOMPSON and VANMETER, Judges; PAISLEY,[1] Senior Judge.

## OPINION

VANMETER, Judge.

Harold Miracle and Amy Brumbach were employed by the Bell County Emergency Medical Services (Bell County EMS) as an emergency medical technician (EMT) and a paramedic, respectively. However, their employment was suspended and then terminated in September 2002 after the Bell County EMS medical director, Dr. Robert Bond, advised the Bell County EMS director, David Broughton, that as of August 19, 2002, neither Miracle nor Brumbach could continue to "perform work in any capacity that requires use of my medical license." Miracle and Brumbach filed this action in the Bell Circuit Court against appellees Bond, Broughton, and the Bell County Judge Executive and Fiscal Court members. The court granted appellees' motion for summary judgment except as to Miracle's defamation claim against Dr. Bond,[2] and this appeal followed. For the reasons stated, we affirm.

■ First, it is clear that Brumbach, as a paramedic, is not entitled to relief. KRS 311A.170(4) specifically provides that "[a] paramedic shall be permitted to render services only under the supervision of an emergency medical services medical director." KRS 311A.010(12) defines an emergency medical services medical director as "a physician licensed in Kentucky who is employed by, under contract to, or has volunteered to provide supervision for a paramedic or an ambulance service, or both[.]"

The record shows that Dr. Bond voluntarily served as the sole medical director of the Bell County EMS, and there is nothing in the record to suggest that any other physician was willing or able to serve in that position. Given the KRS 311A.170(4) requirement that a paramedic may render services only under the supervision of an EMS medical director, Brumbach clearly could not continue to work as a paramedic for the Bell County EMS unless Dr. Bond agreed to supervise her. It necessarily follows, therefore, that the Bell County Fiscal Court had no choice but to terminate Brumbach's employment as a paramedic once Dr. Bond withdrew his agreement to supervise her, regardless of

---

1. Senior Judge Lewis G. Paisley sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

2. The defamation claim subsequently was settled.

whatever reasons might have motivated his action. Hence, she was not wrongfully terminated.

■ Although appellants do not address whether Miracle may be in a different position from Brumbach since he is a certified EMT rather than a licensed paramedic, we note that the supervision provisions of KRS 311A. 170(4) pertain only to paramedics. That statute's EMT counterpart, KRS 311A. 165, does not include similar language requiring medical director supervision of EMTs. Nevertheless, both statutes permit an ambulance service employer to exercise "any reasonable control over" EMT or paramedic employees who provide care on its behalf, and KRS 311A.025(1)(d) refers to an EMS medical director's supervision of persons "licensed or certified by" the Kentucky Board of Emergency Medical Services, which necessarily would include both appellants. Further, 202 KAR [3] 7:465 Section 3(1)(a) specifically obligates the medical director of an ambulance service to supervise the service's employees, including paramedics and EMTs, so as to protect public health and safety. Given these supervisory requirements, it appears that the Fiscal Court was obligated to terminate not only Brumbach's employment, but also Miracle's employment once Dr. Bell withdrew his agreement to supervise him as an EMT. Again, the reasons which motivated Dr. Bond's action are immaterial.

■ In any event, even if Dr. Bond's action did not compel the Fiscal Court's termination of appellants' employment, the trial court did not err by finding that no other genuine issues of material fact existed, and by entering summary judgment for appellees. CR [4] 56.02. Generally, in the absence of a specific contractual provision to the contrary, employment in Kentucky is terminable at-will, meaning that an em-

ployer may ordinarily discharge an employee "for good cause, for no cause, or for a cause that some might view as morally indefensible." *Firestone Textile Co. Div., Firestone Tire and Rubber Co. v. Meadows,* 666 S.W.2d 730, 731 (Ky.1983); *Benningfield v. Pettit Environmental, Inc.,* 183 S.W.3d 567 (Ky.App.2005). However, a narrow public policy exception to this doctrine provides that an

"employee has a cause of action for wrongful discharge when the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law. . . . The public policy must be evidenced by a constitutional or statutory provision. An employee cannot be fired for refusing to violate the constitution or a statute."

*Firestone,* 666 S.W.2d at 731 (quoting *Brockmeyer v. Dun & Bradstreet,* 113 Wis.2d 561, 335 N.W.2d 834, 840 (Wis. 1983)). Whether a public policy is fundamental, well-defined, and evidenced by existing law is a question of law for the courts to decide. *Grzyb v. Evans,* 700 S.W.2d 399, 401 (Ky.1985).

■ Here, appellants essentially claim that rather than being at-will employees, they were protected by an implied employment contract created by the terms of the Bell County EMS Standard Operating Procedures (SOP) and the Bell County Administrative Code. However, the record shows that the SOP in fact specifically allowed for the "discipline and/or discharge [of EMS] employees at the discretion of management[,]" with certain unspecified situations warranting "immediate dismissal without warning." Further, although the Administrative Code established general supervisory and disciplinary policies for county employees, neither the SOP nor the Code included specific contractual rights

3. Kentucky Administrative Regulations.

4. Kentucky Rules of Civil Procedure.

or other obligations altering the parties' at-will employment relationship. Thus, appellants may proceed with their claims for wrongful discharge only if, as a matter of law, their terminations satisfied the public policy exception to the at-will doctrine by violating " 'a fundamental and well-defined public policy as evidenced by . . . a constitutional or statutory provision.' " *Firestone*, 666 S.W.2d at 731. *See also Grzyb*, 700 S.W.2d at 401.

■ In claiming that their terminations satisfied such public policy exceptions, appellants allege that their discharges resulted from their protected conduct in reporting illegal or fraudulent activities. Miracle specifically claims that he was terminated in violation of the Kentucky Whistleblower Act, KRS 61.102, which prohibits retaliatory action by the state or any of its political subdivisions against a public employee

> who in good faith reports, discloses, divulges, or otherwise brings to the attention of the Kentucky Legislative Ethics Commission, the Attorney General, the Auditor of Public Accounts, the General Assembly of the Commonwealth of Kentucky or any of its members or employees, the Legislative Research Commission or any of its committees, members or employees, the judiciary or any member or employee of the judiciary, any law enforcement agency or its employees, or any other appropriate body or authority, any facts or information relative to an actual or suspected violation of any law, statute, executive order, administrative regulation, mandate, rule, or ordinance of the United States, the Commonwealth of Kentucky, or any of its political subdivisions, or any facts or information relative to actual or suspected mismanagement, waste, fraud, abuse of authority, or a substantial and specific danger to public health or safety. No employer shall require any employee to give notice prior to making such a report, disclosure, or divulgence.

KRS 61.102(1). Further, KRS 205.8465 prohibits an employer's discharge, discrimination or retaliation against an employee who in good faith reports Medicaid fraud or abuse to the state's Medicaid Fraud Control Unit or hotline.

More specifically, Miracle alleged that he was discharged because of his whistle-blowing reports of alleged Medicare or Medicaid fraud relating to the use of EMS ambulance services. Although he accused Broughton of being involved in the alleged fraud or abuse, Miracle admitted in his deposition that his reports of wrongdoing were limited to oral complaints to Broughton, and "probably . . . to some ER staff maybe possibly." As Miracle admittedly made no timely report of the alleged fraud or abuse to a statutorily-designated authority, he does not fall within the whistle-blower exception to the terminable at-will doctrine. Further, there is no merit to any claim that Brumbach engaged in whistleblowing activities if and when she conversed with Broughton's wife about his alleged marital misconduct in the workplace. Neither this report nor appellants' various other allegations of workplace inefficiency and mismanagement were made to a statutorily-designated authority, and the claims did not allege specific violations of statutory or constitutional provisions. Hence, as a matter of law, appellants were not entitled to the protections of the whistleblower exceptions to the terminable at-will doctrine. KRS 61.102(1).

■ Next, the trial court did not err by granting summary judgment as to appellants' claims relating to the intentional infliction of emotional distress (IIED) because of the humiliation of being terminated from their employment. It is settled under Kentucky law that in order to establish a claim of IIED, a plaintiff

must prove the following elements: The wrongdoer's conduct must be intentional or reckless; the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; there must be a causal connection between the wrongdoer's conduct and the emotional distress and the distress suffered must be severe. As noted in *Kroger Company v. Willgruber*, Ky., 920 S.W.2d 61 (1996), the tort is not available for "petty insults, unkind words and minor indignities." Nor is it to compensate for behavior that is "cold, callous and lacking sensitivity." *Humana of Ky., Inc. v. Seitz*, Ky., 796 S.W.2d 1 (1990). Rather, it is intended to redress behavior that is truly outrageous, intolerable and which results in bringing one to his knees. *Willgruber, supra.*

*Osborne v. Payne*, 31 S.W.3d 911, 913–14 (Ky.2000) (citing *Craft v. Rice*, 671 S.W.2d 247 (Ky.1984)). The mere termination of employment and the resulting embarrassment do not rise to the level of outrageous conduct and resulting severe emotional distress necessary to support a claim for IIED. *Benningfield*, 183 S.W.3d at 572. Here, as in *Benningfield*, appellants have "not alleged anything that would support [their] IIED claim, and the hope that something will come to light in additional discovery is not enough to create a genuine issue of material fact." *Id.* at 573.

■ Next, we are not persuaded by Miracle's assertion that genuine issues of material fact exist as to whether he was sexually harassed and subjected to a hostile working environment in violation of KRS Chapter 344. More specifically, Miracle initially alleged that Dr. Bond made false and pejorative comments to other EMS and hospital employees regarding his sexual orientation. However, Miracle subsequently indicated during his deposition that he was unaware of the comments until around the time of his suspension, when

Brumbach informed him that Dr. Bond had referred to him by a sexually derogatory term. Although the term was clearly offensive, Miracle was unaware of its usage during his employment. Further, Miracle indicated that he was unaware of any hostility or other work-related issues with Dr. Bond or Broughton prior to his suspension. Hence, no genuine issue of material fact existed as to whether severe and pervasive conduct created a hostile work environment.

■ Next, appellants assert that genuine issues of material fact exist as to their claim that Dr. Bond and Broughton tortiously interfered with their employment by inducing their termination from the Bell County EMS. We disagree. Appellants' licensure and certification were not adversely affected by their termination, and appellants both admitted that they had obtained other employment. Moreover, appellees were entitled to assert their own interests, and to protect and promote public health and safety. *See National Collegiate Athletic Ass'n v. Hornung*, 754 S.W.2d 855 (Ky.1988). Any alleged interference with appellants' employment in the promotion of those interests and responsibilities was not improper, and the trial court did not err by granting summary judgment as to this claim.

■ Finally, although appellants suggest at the conclusion of their brief on appeal that appellees violated the Open Meetings Act, *see* KRS 61.800 to 61.850, they have not demonstrated and we have not found that they timely raised such a claim below. This argument shall not be considered for the first time on appeal.

The court's judgment is affirmed.

ALL CONCUR.