ADMINISTRATIVE OFFICE OF THE COURTS, Appellant/Cross–Appellee

v.

Beverly MILLER, Appellee/Cross–Appellant

2013–SC–000373–TG

Supreme Court of Kentucky.

RENDERED: AUGUST 20, 2015

COUNSEL FOR APPELLANT: Margaret Eileen Mary Keane, Brent Robert Baughman, Melissa Norman Bork, Reva Dawn Campbell, Bingham Greenebaum Doll LLP, 3500 National City Tower, 101 S. Fifth Street, Louisville, Kentucky 40202

COUNSEL FOR APPELLEE: Thomas E. Clay, Clay Daniel Walton & Adams, PLC, Meidinger Tower, Suite 101, 462 South Fourth Street, Louisville, Kentucky 40202

OPINION OF THE COURT BY
SPECIAL JUSTICE JOHN S. REED

This matter is before the Court for the second time on transfer from the Court of Appeals. We now consider the appeal and cross-appeal from the December 3, 2012 summary judgment order of the Jefferson Circuit Court, entered after this Court remanded the case to the Circuit Court on December 22, 2011.

We reverse the Order of the Jefferson Circuit Court granting summary judgment to Beverly J. Miller ("Miller") and denying summary judgment to the Administrative Office of the Courts ("AOC") on Miller's claim that she was a tenured employee of the Court of Justice ("COJ") and, therefore, before she was terminated, she was entitled to the due process provided in the COJ Personnel Policies. As a matter of law, we hold that, on the undisputed record, Miller was not a tenured employee and was not entitled to termination due process under the COJ Personnel Policy.

We affirm the Order of the Jefferson Circuit Court granting summary judgment to the AOC and dismissing Miller's claim under the Kentucky Whistleblower Statute. On the record, we hold as a matter of law that Miller did not report or disclose previously concealed or non-public information that would entitle her to protection under KRS 61.102.

## I. Procedural Background

The course of this long-running public employment dispute is recounted in the December 22, 2011, opinion of this Court. *Miller v. Administrative Office of the Courts,* 361 S.W.3d 867, 869–71 (Ky.2011). There, this Court considered Miller's appeal from the Order of the Jefferson Circuit Court dismissing her claims as being barred under the doctrine of *res judicata* because the issues in question had already been decided in federal court. This Court concluded:

There is nothing in the record below, or in the federal action, indicating that

there has been a finding of whether Miller's position with the AOC was tenured or "at will," and if tenured whether she was afforded her rights under the administrative procedures of the AOC.

... The finding of the federal district court dismissing Miller's whistleblower claims was not necessary to the opinion of the Sixth Circuit that sustained the district court's dismissal of Miller's claim on other grounds, thus depriving the final decision of the federal courts of one of the required tests in order for issue preclusion to apply to the state court action.

*Id.* at 877.

This Court reversed the dismissal of Miller's claims and remanded the case to the Jefferson Circuit Court

for further proceedings in regard to Miller's status as a tenured employee entitled to due process protection afforded by the administrative policies of the AOC, and if she was a tenured employee, a finding of whether those policies were followed in regard to Miller's termination, and in regard to whether Miller reported information that would entitle her to protection under the Kentucky whistleblower statute.

*Id.*

## II. Relevant Facts

As when this Court last considered this dispute, "[t]he specific facts leading up to [Miller's 2001] termination are not necessary to resolution of this matter." *Id.* at 869.

### A. Miller's status as a tenured or at-will employee.

Effective July 15, 1976, Miller (then known as Beverly Doyle) was appointed by the Chief Judge of the Jefferson Circuit Court "as coordinator for the Jefferson Circuit Court," "to serve at the pleasure of the Court," *i.e.*, as an at-will employee. The position she filled was created in 1976 under a temporary grant from the United States Department of Justice Law Enforcement Assistance Administration ("LEAA") to develop the Jefferson County Jury Management Project—a more efficient and effective jury management system for the largest county in the Commonwealth. This represents the first time, and still the only time, a Kentucky trial court has separated jury management from the rest of the trial court administrator's traditional functions.

Effective March 1, 1977, Miller's "position title" was reclassified from "Aid Coordinator" to "Jury Pool Manager." She continued in the same job with the same duties. By the time grant funding for the Jefferson County Jury Management Project ended, the COJ had budgeted funds to continue the Jefferson County jury management program and make permanent the jury pool manager position that had been temporary when it was created under grant funding.[1]

Miller continued as Jefferson County Jury Pool Manager until early 1999, when a change in Kentucky law allowed employees to draw both retirement and salary simultaneously. To take advantage of the new law, she retired as full-time Jury Pool

---

1. Nor does it create a genuine issue of material fact that former Chief Judge Michael O. McDonald recollected over 25 years later that in 1976 or 1977, he wanted, intended, or even asked the AOC that the Jefferson County "jury pool manager" position be tenured. The entire written record shows that Miller and the position she occupied were always at will and non-tenured in Miller's AOC personnel file and in practice at the Jefferson Circuit Court. And in 1976, as Jefferson Circuit Court Chief Judge, Judge McDonald appointed Miller "to serve at the pleasure of the Court."

Manager effective February 28, 1999, and she was rehired part-time in the same position effective April 1, 1999.

Effective July 1, 1999, Miller's "position title" was reclassified from Jury Pool Manager to "Professional Services Supervisor." On July 26, 1999, Miller requested to go full-time in her job effective September 1, 1999. So on September 1, 1999, the AOC personnel manager confirmed to Miller in a letter that she was then a "full-time employee" "as a 'Professional Services Supervisor' with the working title 'Jury Pool Manager.'" Her duties remained the same. After that, as before, Miller consistently referred to herself, and also signed documents, as "Jury Pool Manager" or as "Jury Pool Administrator."

Miller's employment with the COJ ended when she was terminated by Jefferson Circuit Chief Judge Tom Wine in a letter dated April 24, 2001.

There is no indication in any document in Miller's COJ/AOC personnel file that her employment status was ever anything other than at will. Never did the word "tenure" or "tenured" or any equivalent (like "classified" or "covered") appear. Over the course of Miller's employment, her merit status was variously expressed in writing in her personnel file as "at the pleasure of the Court," "unclassified," or "not covered," each of which indicates at-will, non-tenured employment.

For her entire employment with the Jefferson Circuit Court, Miller's duties always included only the function of jury pool management. Traditionally jury pool management has been performed directly by trial court administrators everywhere in Kentucky except Jefferson County where, since 1976, the function was separated for the Jefferson County jury pool.[2] The Jefferson Circuit Court Chief Judge had the administrative authority to delegate to the Trial Court Administrator the responsibility for overseeing the jury pool management function.

**B. Miller's whistleblower status.**

Miller's claim under KRS 61.102 is that she was terminated for alleging, over the period September 2000 to April 2001, both in person and in writing (by letter and tendered grievance papers) that the AOC job descriptions for Chief Court Administrator and Court Administrator included jury pool management duties, which had not been the case in Jefferson County since 1976. Miller alleged that because of the job descriptions, AOC erroneously believed that the Jefferson County Chief Court Administrator and Court Administrator actually performed jury management functions in Jefferson County, leading to what she felt was inadequate support for the jury pool management function in Jefferson County in 2000 and 2001.

Miller explained in an affidavit in this case:

In September, 2000, Robyne Ryan (Assistant Jury Pool Manager) and I decided to pursue an explanation for AOC's refusal to provide support for jury operations. We decided to pursue the validity of talk that circulated in the early

---

**2.** On June 30, 1997, in a final report entitled "Development of a Pay Structure and Performance Appraisal System" submitted to the COJ, the University of Kentucky Center for Business and Economic Research "strongly advocate[d] reducing the number of job titles" by "combining job titles that we found to perform essentially similar types of work."

The report recommended combining the previous jobs "Asst. Trial Court Administrator" (1 incumbent in the Commonwealth), "Jury Pool Manager" (1 incumbent), "Court Administrator" (9 incumbents), and "Regional Court Administrator" (3 incumbents) in a newly-named position category to be called "Trial Court Administrator."

1980's that Tim Vize, the District Court Administrator at the time, claimed to perform my job in order to justify an increase in his salary from AOC. We suspected the talk had some basis because of the inordinate amount of support provided by AOC to Jefferson County Court Administrators in relation to the duties they perform.

And Miller's April 2001 grievance papers expressed her theory this way:

> Over several years, I have requested numerous times AOC assign our office additional staff. Our requests have been continually denied. Though the workload in the jury pool has more than doubled, we still operate with the same number of employees as we did in 1977.
>
> The job descriptions of Chief Court Administrator, Circuit Court Administrator and District Court Administrator assign performing "the highly responsible duties of jury management" as one of the two major functions of each position.
>
> As you know, for over 20 years, the Court Administrators in Jefferson County have not performed these duties assigned by AOC.

The AOC job descriptions for the Chief Court Administrator and Court Administrator positions that Miller cites contain the following identical language that is material to Miller's whistleblower claim:

**Characteristics of the Class:**

Under administrative direction of the Chief District and Circuit Judge, performs highly responsible duties in caseflow management and jury management; acts as general liaison among court officials, the public, and the Central Administrative Office of the Courts system.

**Examples of Duties:**

. . .

Assists in the calling, pooling and coordination of jurors, answers public inquiries, and individual juror complaints and questions, distributes and handles juror questionnaires.

## III. Analysis

### A. Standard of Review.

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. The trial court "must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky.1991).

To defeat a properly supported motion, the other party must "present[ ] at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Id.* at 482. "[S]peculation and supposition are insufficient to justify a submission of a case to the jury . . . ." *O'Bryan v. Cave*, 202 S.W.3d 585, 588 (Ky.2006) (quoting *Chesapeake & Ohio Ry. Co. v. Yates*, 239 S.W.2d 953, 955 (Ky.1951)).

Summary judgment "is intended to expedite the disposition of cases." *Ross v. Powell*, 206 S.W.3d 327, 330 (Ky.2006). "If the grounds provided by [CR 56] are established, it is the duty of the trial judge to render appropriate judgment." *Id.*

■ The appellate review of a summary judgment decision involves the *de novo* examination of the issues of law as applied to the record. *Caniff v. CSX Transp., Inc.*, 438 S.W.3d 368, 372 (Ky.2014).

AOC argues that only this Court has subject matter jurisdiction to decide the question of whether Miller's position was

tenured or at will.[3] So AOC argues that the December 3, 2012 Order is void as to that issue. But we reach the same result as a matter of law for the same reasons, whether (a) the Circuit Court had no subject matter jurisdiction and its judgment is void or (b) in review of the Circuit Court decision under CR 56, this Court applies the law *de novo* to the undisputed material facts.

Miller argues that her claim to tenure was remanded in December 2011, for findings of fact by the Franklin Circuit Court under CR 52.01. But this Court remanded for "further proceedings in regard to Miller's status as a tenured employee ... and, *if* she were a tenured employee *a finding* of whether those policies were followed...." *Miller*, 361 S.W.3d at 877 (emphasis added).[4] CR 52.01 does not apply because the Circuit Court did not try the case "upon the facts without a jury or with an advisory jury." The Circuit Court granted summary judgment, viewing the record before it as devoid of any dispute as to any material fact.[5]

**B. As a matter of law, Miller was always an at-will, non-tenured employee.**

 Under Kentucky Constitution §§ 110(5)(a) and 116, the Supreme Court has the power to prescribe rules for the appointment of COJ personnel, and the Chief Justice is the executive head of the COJ, in charge of all necessary administrative functions. *Nance v. Kentucky Admin. Office of the Courts*, 336 S.W.3d 70 (Ky.

2011); *Jones v. Com. of Kentucky, Admin. Office of the Courts*, 171 S.W.3d 53 (Ky. 2005).

From the beginning of her employment until her termination, Miller's appointing authority was the Chief Judge of the Jefferson Circuit Court. *See* 1989 COJ Personnel Policies, Section 2.01 Appointing Authority "The appointing authority is the person authorized to hire and fire employees.... The elected official is the appointing authority for the personnel in his or her office." *See* 1999 COJ Personnel Policies, Section 3.01 Appointing Authority "The appointing authority is the person authorized to hire and fire employees.... The elected official, clerk or judge, is the appointing authority for the personnel in his or her office." *Id.*

As the Jefferson Circuit Court said, "[i]t is clear ... from a review of the record that AOC intended her position to be non-tenured and to be included in the term 'trial court administrators.'" Order of December 3, 2012, at 16. We add that the record reflects that AOC and the Jefferson Circuit Court always treated Miller and the position she occupied as non-tenured.

In 1976, Miller was first appointed by the Chief Judge of the Jefferson Circuit Court to serve "at the pleasure of the Court." Her at-will status did not change when her position began to be funded by non-grant funds in the COJ budget. Her at-will status continued until her retirement, resumed when she was rehired, and lasted until she was terminated. Miller's

---

**3.** For this proposition, she cites *Jones v. Admin. Office of the Courts*, 171 S.W.3d 53 (Ky. 2005); *Martin v. Admin. Office of the Courts*, 107 S.W.3d 212, 214 (Ky.2003); and *Travis v. Minton*, No. 2012–SC–000472–OA, 2013 WL 4620532, at *1, 2013 Ky. Unpub. LEXIS 47, at *3 (Ky. Aug. 29, 2013).

**4.** The AOC and the Chief Judge of the Jefferson Circuit Court treated Miller and her posi-

tion as non-tenured, and it was undisputed that she did not receive due process when she was terminated.

**5.** Although the Circuit Court called its review of the record "Findings of Fact," we note that the "Findings" were essentially a timeline recitation of undisputed evidence in the record.

at-will status was never altered in her personnel file or in practice.

Miller was an at-will, non-tenured employee under both (a) the February 24, 1989, COJ Personnel Policies in effect when Miller retired on February 28, 1999, and was rehired on April 1, 1999, and (b) the April 19, 1999, COJ Personnel Policies in effect when Miller was terminated in April 2001. No change that went into effect in the COJ Personnel Policies on April 19, 1999, altered Miller's status as an at-will employee.

Both the 1989 and 1999 COJ Personnel Policies include the following language at Section 1(2): "The Policies are applicable to all appointed employees and appointed officials in the Court of Justice unless *specific exceptions are clearly indicated.*" (Emphasis added.)

And both the 1989 and 1999 COJ Personnel Policies except trial court administrator positions from the provisions of the Policies related to tenure. Exceptions to tenure in the COJ Personnel Policies— including judges' secretaries, law clerks, staff attorneys, certain deputy clerks, members of families of appointing authorities, trial and master commissioners, and court reporters—describe positions and functions that any incumbent Chief Judge of a trial court or any incumbent trial judge should control in order to ensure the smooth working of a court. That is why the positions are designated at will or non-tenured. According to the undisputed testimony of William E. Davis, from 1975 to 1979 the Director of the AOC, this distinction between tenured and non-tenured positions is consistent the operation of other state court systems.

In the context of the entire record and the 1989 and 1999 COJ Personnel Policies, we hold that Miller's "jury pool manager" position and function was included in "trial court administrators" as a "specific excep-

tion[ ] . . . clearly indicated" in both Section 1(3)(1) of the 1989 COJ Personnel Policies in effect when Miller retired and was rehired, and in Section 1(3)(m) of the 1999 Policies in effect when she was terminated.

The fact that after Miller was rehired, she received a six-month increment, does not mean that she or the position she occupied thereby became tenured. As an at-will or non-tenured employee excepted from tenure under the 1989 COJ Personnel Policies, Section 1(3)(1), she was entitled to the increment she was paid. Section 1(4) of the 1989 COJ Personnel Policies, under which Miller was rehired, reads, in relevant part:

> These exceptions mean that the employees and officials listed above do *not* have tenure and do *not* have a right of appeal of grievances. *Such employees shall not serve a probationary period; however, they shall receive an increment after six (6) calendar months of service* which shall establish their annual increment date except those under the supervision of the Director of the Administrative Office of the Courts.

(Third emphasis added.) The same increment was not available under Section 1(4) of the 1999 Personnel Policies in effect when she received the increment. Neither (a) the fact that Miller received an increment to which she may not have been entitled, nor (b) the fact that Miller's personnel file says in error that the increment she received was "probationary," causes her or her position to be tenured in face of the overwhelming facts in the record that show she was always at will and non-tenured. Under the circumstances in this matter, at-will employment cannot be transformed to tenured employment (and tenure cannot be otherwise conferred) by mistake or accident.

In its December 3, 2012 Order holding that Miller was tenured in her position, the Circuit Court quoted this Court as follows from *Parts Depot, Inc. v. Beiswenger*, 170 S.W.3d 354, 363 (Ky.2005):

> Once an employer establishes an express personnel policy and the employee continues to work while the policy remains in effect, the policy is deemed an implied contract for so long as it remains in effect. If the employer unilaterally changes the policy, the terms of the implied contract are also thereby changed.

■ But because the COJ Personnel Policies did not make Miller a tenured employee, application of a concept of "implied contract" to the Policies cannot convert "at-will" employment to "tenured" employment. "Generally, in the absence of a specific contractual provision to the contrary, employment in Kentucky is terminable at-will, meaning that an employer may ordinarily discharge an employee 'for good cause, for no cause, or for a cause that some might view as morally indefensible.' " *Miracle v. Bell Cty. Emerg. Med. Serv.*, 237 S.W.3d 555, 558 (Ky.App.2007) (quoting *Firestone Textile Co. Div., Firestone Tire and Rubber Co. v. Meadows*, 666 S.W.2d 730, 731 (Ky.1983)). The employees in *Miracle* were at-will public employees who claimed tenured status on the theory they had an implied contract based upon personnel policies that applied to them.

■ And, as the Court of Appeals held in *Miracle*, following this Court in *Meadows*, 666 S.W.2d at 731, there is "a narrow policy exception" to the at-will doctrine that allows an at-will employee to bring a claim based upon a constitutional provision or statute, such as a claim under KRS 61.102. *Miracle*, 237 S.W.3d at 558–59. In *Miracle*, the Court of Appeals affirmed summary judgment for the public employer both on the at-will employees' termination claim and on their whistleblower claim under KRS 61.102. *Id.*

**C. Miller did not make a disclosure qualifying her for protection under KRS 61.102.**

■ The purpose of the Kentucky Whistleblower Act "is to protect employees who possess knowledge of wrongdoing that is concealed or not publicly known, and who step forward to help uncover and disclose that information." *Workforce Development Cabinet v. Gaines*, 276 S.W.3d 789, 792 (Ky.2008) (quoting *Davidson v. Com., Dept. of Military Affairs*, 152 S.W.3d 247, 255 (Ky.App.2004)). In *Davidson*, the Court of Appeals affirmed a summary judgment in favor of Military Affairs on a whistleblower claim, in part because the employee "did not report anything ... which was not already known, such as secretive agency procedures." 152 S.W.3d at 255; *see also Helbig v. City of Bowling Green*, 371 S.W.3d 740, 743 (Ky. App.2011) (denying whistleblower claim where the allegedly illegal policy and the statute making it illegal were available to the public).

Similarly, as the Jefferson Circuit Court noted in its order of December 3, 2012, Miller did not disclose information that had been concealed or was not publicly known. It defies reason to suggest that, in 2000 and 2001, it was a secret from AOC and the Chief Judge of the Jefferson Circuit Court that, for almost the last 25 years (save the month of March 1999, when she was retired), Miller had directly performed jury pool management duties in Jefferson County under the appointing authority of every Jefferson Circuit Court Chief Judge since 1976.

Both sides of Miller's proffered whistleblower calculation—the range of duties of trial administrators in Kentucky courts as

expressed in job descriptions and, since 1976, the unique Jefferson County situation in which the Jury Pool Manager directly performed the jury pool management functions—were publicly known and not concealed from anyone.

So we hold as a matter of law that Miller's whistleblower claim fails for at least the lack of disclosure of concealed or non-public information. Any discovery by Miller in this case could not have changed the fact that she disclosed no concealed information. For at least this reason, the Circuit Court did not abuse its discretion by granting summary judgment to AOC when Miller argued that summary judgment was premature without more discovery.

## IV. Conclusion

For the foregoing reasons, the Judgment of the Jefferson Circuit Court:

(1) is reversed as to Miller's claims based upon her being a tenured employee; and

(2) is affirmed as to the dismissal of Miller's claims under the Kentucky Whistleblower Statute, KRS 61.102.

This matter is remanded to the Jefferson Circuit Court for entry of a judgment for the Administrative Office of the Courts on all of Miller's claims.

Barber, Cunningham, Noble and Venters, JJ., and Special Justice Charles E. English and John S. Reed, concur. Keller, J., concurs in result only. Minton, C.J.; and Abramson, J., not sitting.