Kale ROSCOE, Appellant

v.

ANGELUCCI ACOUSTICAL, INC., Appellee

NO. 2012-CA-001933-MR AND NO. 2014-CA-000536-MR

Court of Appeals of Kentucky.

FEBRUARY 17, 2017; 10:00 A.M.

BRIEF FOR APPELLANT: John E. Davis, Lexington, Kentucky.

BRIEF FOR APPELLEE: Ernest H. Jones, II, Jamie Wilhite Dittert, Lexington, Kentucky.

BEFORE: COMBS, J. LAMBERT, AND THOMPSON, JUDGES.

## OPINION

LAMBERT, J., JUDGE:

Kale Roscoe is the appellant in these cases stemming from a construction subcontract with Angelucci Acoustical, Inc., for the completion of the University of Kentucky (UK) Coldstream Campus building now known as the Hewlitt-Packard building. Roscoe appeals from a 2012 Fayette Circuit Court summary judgment wherein the trial court pierced the corporate veil and assessed liability versus Roscoe in Angelucci's favor. The 2014 appeal is from the circuit court's judgment granting Angelucci's cross-claim for sanctions for Roscoe's failure to comply with a post-judgment discovery order. Finding no error, we affirm in both appeals.

The facts and procedural history of these combined appeals are well known to the parties and will only be repeated as is necessary to the understanding of this opinion. In so doing we shall begin with a simplified chronological summary of the legal interactions of the parties. On June 14, 2006, Lexhold Partners II Lot 14-A Exclusive, LLC (Lexhold Partners), was awarded the contract to undertake and complete the construction of a building at 810 Bull Lea Run in Lexington, Kentucky. UK owns the land upon which the building was constructed. The approximately 50,000 square foot building is currently leased by Hewlitt-Packard; Lexhold Partners holds the lease.

Lexhold Premiere Commercial Contractors, LLC (Premiere), was the general contractor for the project. Premiere was formed solely for the purpose of constructing the Hewlitt-Packard building, and it ceased to exist at its completion. Premiere had no other projects, assets, or clients.

Kale Roscoe was one of two managing partners of both Partners and Premiere.[1]

On March 30, 2007, Premiere and Angelucci Acoustical, Inc. (Angelucci), entered into a subcontract for Angelucci to install drywall and to construct and install acoustical ceiling throughout the Hewlitt-Packard building. The contractual price between Premiere and Angelucci was $396,240.30. The building was completed in late 2007, and the tenant accepted the premises in December of that year, with a temporary certificate of occupancy issued the following month. However, Angelucci continued to complete a number of additional tasks after that date at Premiere's request.

Because of numerous change orders throughout but especially near the end of the building's construction, Angelucci incurred an additional $88,053.70 in costs, which Roscoe refused to pay (claiming the additional work consisted of merely punch list items). Therefore, on June 17, 2008, Angelucci filed claims for breach of contract, unjust enrichment, and a mechanic's lien (Fayette Circuit Court No. 08-CI-02977) versus Premiere, Lexhold Partners, and Roscoe. Two other subcontractors intervened in that suit, seeking unpaid balances due them as well. A fourth subcontractor filed its separate suit (No. 08-CI-04362), naming all other subcontractors (there were eight subcontractors in total, including Angelucci) that had filed mechanics' liens as well as Roscoe, Oliver, Lexhold Partners, and Premiere. In April 2009 Angelucci's action (which by then included cross-claims against Premiere, Lexhold Partners, and Roscoe) was transferred and consolidated with Civil Action

---

1. Rudy Oliver, Roscoe's corporate partner in Partners and Premiere, is not a party to these appeals.

No. 08-CI-04362.[2] The circuit court granted Angelucci's later motion to amend the complaint to include claims for fraudulent misrepresentation and concealment against Premiere, Lexhold Partners, and Roscoe.

The circuit court granted partial summary judgment in favor of Angelucci on October 29, 2010, awarding it $88,053.70 plus post-judgment interest "as allowed under the law." Roscoe's motion to alter, amend, or vacate was denied on December 20, 2010. Although rendered final and appealable, Roscoe did not appeal from those orders.

In a later ruling, on October 3, 2012, the trial court granted Angelucci's motion to pierce the corporate veil, finding that Roscoe was individually liable, and held that Angelucci's mechanic's lien versus Roscoe was valid. In so doing, the Fayette Circuit Court considered the Kentucky Supreme Court's recent ruling on that subject, *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC*, 360 S.W.3d 152 (Ky. 2012).

Roscoe appealed from the judgment (No. 2012-CA-001933-MR) on November 5, 2012, but he failed to post a supersedeas bond to stay the enforcement of the circuit court judgment. Thus, during the pendency of that appeal, and in an effort to collect the judgment awarded it, Angelucci sought a charging order and an asset discovery deposition.

Various motions, responses, and orders ensued. Roscoe failed to meet the deadlines for discovery; he sought and was granted a continuance for the deposition scheduled on January 8, 2014. On January 15, 2014 (the date of the rescheduled deposition), after arriving an hour late, and with a limited number of the documents requested and ordered in response to the subpoena duces tecum, Roscoe interrupted his deposition and asked to go off the record to explore settlement possibilities. The parties negotiated terms of the settlement, which were reduced to writing, signed by the parties and counsel present, notarized, and entered into the record, namely: By close of business ten days hence, Roscoe was to pay Angelucci $30,000.00 in exchange for dismissal of all pending legal action. If not paid by that date, Roscoe agreed that Angelucci could "seek all available remedies for satisfaction." Roscoe failed to perform the terms of the settlement; the record does not contain a request for an extension of time to pay.

The circuit court conducted two hearings in these cases thereafter: The first was held on February 26, 2014, after which the circuit court held Roscoe in contempt. The second hearing, held on March 4, 2014, consisted of witness testimony and the introduction of documentary evidence for Angelucci, as well as arguments of counsel for both parties. Roscoe did not attend either hearing, nor did his counsel present testimony (except through cross-examination of Angelucci's witnesses). The circuit court issued its ruling on that same date, finding that Roscoe had failed to purge himself of contempt [3] and assessing a total of $334,785.34 in damages (both compensa-

---

2. The seven other subcontractors have since settled their claims in this construction case, most of them accepting "pennies on the dollar" in order to do so. As the trial court stated, Angelucci is "the last subcontractor standing." One of the settling subcontractors had to file suit to enforce its judgment.

3. At the February 26, 2014, hearing, the circuit court indicated that Roscoe could purge himself of contempt by paying the settlement amount prior to the hearing scheduled for March 4, 2014. At the time, the court indicated its belief that Roscoe was not likely to satisfy the debt, stating that "the only thing that's going to get his attention is being put in jail."

tory and punitive) and attorney fees due Angelucci. Roscoe appealed (No. 2014-CA-000536-MR).

Roscoe raises nine arguments in his two appeals; we are also asked to address a pending motion, raised at the appellate level, concerning the late filing of Roscoe's combined reply brief. At the risk of being repetitive, we shall consider each appeal separately, but take up the matter of the pending motion first since it affects the filing of Roscoe's reply brief.

At the request of Angelucci and with the agreement of Roscoe, the appeal in No. 2012-CA-001933-MR was stayed in an effort to reconcile these matters. When settlement failed, the consolidated appeals moved forward, and Roscoe filed separate appellant briefs, per this Court's order of July 15, 2014, for each of them. Angelucci's combined brief was filed on December 12, 2014, and Roscoe's combined reply brief was due fifteen days later (again, pursuant to this Court's order). By motion dated January 9, 2015, Roscoe requested additional time to file the reply brief. It was tendered on January 22, 2015, but lacked the proper margin required under CR 76.12(4)(a)(ii). Roscoe's corrected reply brief was tendered on February 24, 2015, but it exceeded the page limitation set forth in CR 76.12(4)(b)(i). A second corrected reply brief was tendered on March 6, 2015.

Angelucci moved this Court to strike Roscoe's reply brief or in the alternative "for leave to give notice to panel deciding the merits of these consolidated appeals that Roscoe's references to matters outside of the record are incorrect." Roscoe's response to this motion was filed late. He was then given additional time in which to respond, and his tendered reply brief was ordered filed. The Court of Appeals passed ruling on Angelucci's motion to strike or in the alternative motion for leave to give

notice to the merits panel. We deny Angelucci's motion to strike Roscoe's reply brief. Although we agree with Angelucci that Roscoe has requested and received multiple extensions of time throughout this process, our consideration of the reply brief, regardless of its content, does not affect the outcome of these appeals. Therefore, we shall deny Angelucci's motion to strike and the alternative motion by separate order.

Turning then to the first appeal, we shall consider Roscoe's four arguments, beginning with his assertion that the circuit court erroneously granted partial summary judgment in Angelucci's favor. Roscoe insists that there were genuine issues of material fact and no demonstration of impossibility of prevailing at trial. Kentucky Rules of Civil Procedure (CR) 56.03; *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 483 (Ky. 1991); *Pace v. Burke*, 150 S.W.3d 62, 64 (Ky. App. 2004). Roscoe contends that the circuit court "cherry picked and mischaracterized a few facts to justify its decision while ignoring the numerous facts which proved that Appellant did nothing to cause a wrong sufficient to justify the decision reached."

"The appellate review of a summary judgment decision involves the *de novo* examination of the issues of law as applied to the record. *Caniff v. CSX Transp., Inc.*, 438 S.W.3d 368, 372 (Ky. 2014)." *Admin. Office of Courts v. Miller*, 468 S.W.3d 323, 327 (Ky. 2015). We have examined the voluminous record in its entirety, including the depositions and hearings held, and cannot agree with this assertion.

The circuit court carefully separated the wheat from the chaff before granting Angelucci's partial motion for summary judgment. We agree that there were factual disputes but that none amounted to

"genuine issues of material fact." *Steelvest, supra.* The court's first partial summary judgment was focused on the breach of contract claim. The court specifically addressed Angelucci's burden of proof and Premiere's defenses in response thereto, based on the pleadings throughout the three years the parties had been engaged in litigation up to that point. We quote directly from the circuit court's legal analysis in this regard:

In order to prevail on a breach of contract claim, Angelucci has to prove that (1) it had a valid contract with Lexhold, (2) it fully performed under the contract, (3) Lexhold failed to fully perform by paying Angelucci the balance owed under the contract, and (4) that Angelucci suffered an economic loss as a result of Lexhold's nonperformance. *See Holly Creek Production Corp. v. Rose,* 284 S.W.3d 542 (Ky. App. 2009); *Barnett v. Mercy Health Partners–Lourdes, Inc.,* 233 S.W.3d 723 (Ky. App. 2007).

Lexhold Premiere asserts the following defenses: (1) the document titled "Partial Un-Conditional Waiver" creates a genuine issue of material fact, and (2) that Angelucci has to prove that it performed work on the subject property after December 12, 2007 [the date on which H-P accepted the premises] to recover the amount due Angelucci. **Lexhold Premiere has failed to produce any evidence to refute that (1) the contract and written and executed work orders were valid; (2) that Angelucci performed the work it agreed to perform under said contract and change work orders; (3) that Angelucci has not been paid in full for the work it agreed to perform under said contract and change work orders; or (4) that the amount due and owing to Angelucci under said contract and change work orders is $88, 053.70.**

. . . .

Lexhold has never claimed ... that Angelucci failed to perform the work it was obligated to perform under the contract and written, executed change orders and has never produced any evidence that Angelucci failed to perform such work.

(Emphasis added).

■ At this late date, Roscoe fails to direct us to any refutations or even ambiguities in the record regarding Angelucci's claim of breach of contract. "The party opposing summary judgment cannot rely on their own claims or arguments **without significant evidence** in order to prevent a summary judgment." *Wymer v. JH Properties, Inc.,* 50 S.W.3d 195, 199 (Ky. 2001) (emphasis added). *See also O'Bryan v. Cave,* 202 S.W.3d 585, 588 (Ky. 2006), cited by the circuit court, wherein the Supreme Court of Kentucky held that summary judgment was proper because the opponent "failed to produce any evidence, except speculation, upon which the trier of fact might reasonably find judgment in his favor." We hold that "the Circuit Court did not abuse its discretion by granting [partial] summary judgment" to Angelucci on the breach of contract claim. *AOC v. Miller, supra* at 331.

Roscoe's next argument is similar to the first: He alleges that the circuit court's decision was based on "misstatements of facts and legal conclusions unsupported by the facts while ignoring the numerous facts which were contrary to the decision it apparently had decided to reach." In his brief's lengthy accusation of the court being outcome-oriented, Roscoe makes multiple references to the court's summary judgments, yet he lists a single citation to the record (namely, to a question and a two-sentence response from his own deposition) to support his argument. This is in direct contravention to the mandate in CR

76.12(4)(c)(v) that the argument contain "ample supportive references to the record and citations of authority pertinent to each issue of law[.]" *See also Mullins v. Ashland Oil, Inc.*, 389 S.W.3d 149, 153 (Ky. App. 2012). Roscoe also fails to state *"at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." Id.* (emphasis original). Because of the repetitive nature of the argument as well as the deficiencies in the appellate brief, we have reviewed this issue under a standard of manifest injustice and affirm. *Mullins*, 389 S.W.3d at 154.

■ We turn now to the issue of appropriateness of piercing the corporate veil. In its 2012 Opinion and Order, the circuit court again ruled in Angelucci's favor, granting a second partial summary judgment against Roscoe (and Lexhold Partners). Two years had passed since the circuit court's previous ruling, during which time the Kentucky Supreme Court had issued the *Inter-Tel, supra,* decision. Also during that time additional discovery had taken place, and Angelucci had renewed its motion (previously denied) under the corporate veil theory.

In addressing Angelucci's renewed motion, the circuit court made the following findings of fact:

The two managing members of the Lexhold Partners are the same two managing members of Lexhold Premiere, Roscoe and Oliver. They developed Lexhold Premiere Commercial Contractors, LLC solely for the purpose of serving as the general contractor for the project. This construction project was the only asset of Lexhold Premiere. The contract price Lexhold Partners was to pay Lexhold Premiere was $5,247,000.

In the contract relating to the construction of the building drafted by Lexhold Partners, dated October 1, 2006, entered into between Lexhold Partners II Lot 14 Exclusive, LLC and Lexhold Premiere Commercial Contractors, LLC, the **owner** of the property is listed as Lexhold Partners. Roscoe signed the contract on behalf of the Lexhold Partners and Oliver signed on behalf of Lexhold Premiere. Moreover, Lexhold Partners is also listed as the **owner** of the property in the contract with the architect for the project. These documents were drafted by or on behalf of Lexhold Partners.

(Emphasis in original.) After addressing the standard for granting summary judgment, the circuit court analyzed the motion in terms of *Inter-Tel's* elements for piercing the corporate veil, *viz.*:

A Kentucky trial court may proceed under the traditional alter ego formulation or the instrumentality theory because the tests are essentially interchangeable. Each resolves to two dispositive elements: (1) domination of the corporation resulting in a loss of corporate separateness *and* (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice. In assessing the first element, the courts should look beyond the five factors enumerated in *White* [cited *infra*] to the more expansive lists of factors discussed *supra*. As to the second element, the trial court should state specifically the fraud or injustice that would be sanctioned if the court declined to pierce the corporate veil.

*Inter-Tel, supra* at 165. The *Inter-Tel* court listed the eleven factors to consider, with emphasis on the "four factors that are the most critical":

[C]ourts give the most emphasis to **"grossly inadequate capitalization, egregious failure to observe legal formalities and disregard of distinctions**

between parent and subsidiary, and a high degree of control by the parent over the subsidiary's operations and decisions, particularly those of a day-to-day nature." We believe that these are the most critical factors and that Kentucky courts should consider the aforementioned expanded lists instead of focusing solely on the five factors identified more than thirty years ago in *White* [*v. Winchester Land Development Corp.,* 584 S.W.2d 56 (Ky. App. 1979) ].

*Inter-Tel, supra* at 164 (emphasis ours; internal citation omitted). The circuit court then, with painstaking effort (and for four pages of its decision), enumerated the many indiciae of a total lack of corporate separateness. In spite of Roscoe's protestations to the contrary (and yet again without supportive references to the record), we can find no error in the circuit court's ruling that the *Inter-Tel* analysis had been satisfied under the facts and circumstances in this matter. It is clear from our review of the record that "Lexhold Partners and/or Roscoe exercised complete dominion and control over Lexhold Premiere." Roscoe's insistence that he exercised no dominion over either entity is disingenuous at best.

 Roscoe's final argument in his first appeal is that the circuit court erred in failing to identify a specific factual basis that continued recognition of the corporation would sanction fraud or promote injustice. *Inter-Tel* requires this: "[T]he trial court should state specifically the fraud or injustice that would be sanctioned if the court declined to pierce the corporate veil." *Id.* at 165. As Angelucci correctly points out, the court did state specific reasons for its finding in this regard, which we quote directly:

As in *Inter-Tel*, Lexhold Partners caused Lexhold Premiere to be obligated to pay Angelucci for work performed on the subject property and then rendered it unable to pay. Lexhold Partners limited the value of the sole asset of Lexhold Premiere and caused it to bear the brunt of the failure to pay subcontractors while Lexhold Premiere derived the benefit of the improvements to real property by its lease agreement with the landowner and agreement with HP.

Similarly, it appears that the second scenario identified in *Inter-Tel* applies as all assets that could or should have been part of Lexhold Premiere were moved beyond the reach of legitimate creditors and have been retained largely by Lexhold Partners. Roscoe concedes that Premiere was formed for the sole purpose of trying to escape the hassles and liabilities associated with being a general contractor[,] and he and Oliver wanted to keep the money "in house." Premiere had no assets other than the $5,247,000 contract with Lexhold Partners and was in Roscoe's terms a "pass-through." Moreover, Partners has reaped all of the benefits from this construction project and currently receives revenue from its lease with the sole tenant of the building, Hewlitt-Packard. That was the purpose of its original lease with "Commonwealth of Kentucky for the use and benefit of the University of Kentucky acting by and through the Board of Trustees of the University of Kentucky." To allow Partners and Roscoe to escape liability under these circumstances would, in fact, sanction fraud and promote injustice against Angelucci and the other subcontractors.

Thus Roscoe has failed to convince this Court that the circuit court's judgment was lacking specific factual bases for its decision regarding fraud and injustice. Accordingly, we affirm.

We now turn our focus on the second appeal, dealing with the finding of contempt and damages assessed. As stated

previously, Roscoe's failure to file a supersedeas bond in his first appeal resulted in Angelucci's seeking redress at the circuit court level. CR 73.06(2). In an effort to execute the judgment (CR 69.03), Angelucci sought discovery pursuant to a charging order and an asset discovery deposition. In response, Roscoe sought to limit the scope of discovery by filing a motion for a protective order. Roscoe's motion was denied on December 17, 2013, and the circuit court directed Roscoe to appear for the asset discovery deposition. We have described Roscoe's actions thereafter in the chronology laid out in the earlier part of this opinion. After the promised settlement failed, Angelucci moved to hold Roscoe in contempt, and the court ordered a hearing, which Roscoe did not attend. He likewise chose not to attend the hearing on damages, and the court ruled as stated above.

▮ Roscoe makes five separate arguments in the second appeal, beginning with his contention that the circuit court abused its discretion in denying Roscoe's motion for a protective order in which he sought to limit the scope of discovery. Roscoe contends that CR 69.03 has a "far more limited scope than that of the pre-trial discovery rules," namely that of discovering "the judgment debtor's collectable assets."

We disagree. We initially note that Angelucci's subpoena duces tecum was filed in an effort to do just that: to discover Roscoe's collectable assets. Roscoe had insisted that he did not post a supersedeas bond because he could not afford to do so. Angelucci believed otherwise and sought discovery of assets that could be used to satisfy the judgment. CR 69.03 clearly permits Angelucci, the judgment creditor, to "obtain discovery from any person, including the judgment debtor, in the manner provided in these Rules." In spite of the circuit court's ruling denying the motion for protective order, Angelucci voluntarily

agreed to limit the subpoena's scope to the three previous years (rather than the ten years it had initially sought). We find no abuse of discretion in the circuit court's denial of Roscoe's motion for protective order.

▮ Roscoe next asserts that the circuit court abused its discretion in its finding of contempt, arguing that its decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Mullins v. Consol of Kentucky, Inc.*, 368 S.W.3d 119, 120 (Ky. App. 2012). Here Roscoe cites impossibility (because of inclement weather, insufficient time, family sickness, death of counsel's father, to name a few of the excuses he offered) rather than willful conduct or bad faith. The circuit court was not convinced by these excuses and neither are we. Roscoe had more than ample time to comply with the subpoena. He sought and was granted a continuance for his deposition for which he appeared late and shorthanded, then requested settlement discussions. As Angelucci states in its brief, '[t]he trial court's rulings [on this issue] are supported by ample evidence in the record." They do not constitute an abuse of discretion, and we decline to set the contempt finding aside.

Roscoe's third claim of error concerns the sanctions of striking the pleadings and entering a default judgment, stating that they "bear [no] reasonable relationship to the seriousness of the offense." *See Ready v. Jamison*, 705 S.W.2d 479, 482 (Ky. 1986), cited by Roscoe. Roscoe urges that the circuit court should have warned him of the consequences or considered a lesser sanction, and that Angelucci was not prejudiced by the delay.

The record supports the circuit court's imposition of these sanctions. We find no abuse of discretion and affirm same. *See S. R. Blanton Development, Inc. v. Investors Realty and Management Co., Inc.*, 819 S.W.2d 727, 730 (Ky. App. 1991).

We are fourthly asked by Roscoe to set aside the default judgment under a theory of insufficient evidence of fraud, citing CR 55.01 for the proposition that the circuit court should have held "a hearing 'to establish the truth of any averment' before it enter[ed] judgment." Roscoe goes on to state that "it is an egregious abuse of discretion to ignore all of the evidence in the record and elect to enter a finding that has no supporting evidence in the record."

A trial court may properly enter a default judgment in two circumstances: (1) when a defendant does not appear at all; or (2) when a defendant who has appeared in the action fails to defend as the Rules require. CR 55.01 ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, the party entitled to a judgment by default shall apply to the court therefor."). Once the deficient answers were stricken in this case, both these circumstances applied. The corporations were in default.

*Statewide Envtl. Servs., Inc. v. Fifth Third Bank*, 352 S.W.3d 927, 933 (Ky. App. 2011). Likewise, once the circuit court ordered Roscoe's pleadings stricken, "both these circumstances applied." *Id.* We find no error in this regard.

Roscoe's final argument is that the circuit court erred in its award of damages to Angelucci. The record contains the court's careful calculation of Angelucci's evidence regarding its damages and attorney fees, and we find no reason to set the damages aside.

The judgments and orders of the Fayette Circuit Court are affirmed.

ALL CONCUR.