**Phyllis J. MINIARD (a/k/a Jenny Miniard), Appellant**

v.

**Paul G. TURNER and Gwen G. Turner, Appellees**

NO. 2015–CA–000075–MR

Court of Appeals of Kentucky.

MARCH 17, 2017; 10:00 A.M.

BRIEF FOR APPELLANT: Charles J. Lisle, Lexington, Kentucky

BRIEF FOR APPELLEES: John F. Billings, Christopher Thacker, Stephen Wilson, Lexington, Kentucky

BEFORE: KRAMER, CHIEF JUDGE; CLAYTON AND J. LAMBERT, JUDGES.

OPINION

LAMBERT, J., JUDGE:

Phyllis J. Miniard (Jenny) appeals the Jessamine Circuit Court's order of summary judgment dismissing her claim against Paul and Gwen Turner for unpaid real estate commissions due. We affirm.

In October 2005 the Turners entered into a contract with Cooper Development for the sale of their approximately seven-

ty-five acre farm in Jessamine County, Kentucky. The sale price was $1,200,000.00, with $100,000.00 due at the closing and the remaining $1,100,000.00 payable over a term of years. Matt Miniard, although he was not the real estate broker on the contract, was included in the sales contract as receiving 3% of the principal, with a total commission of $36,000.00. As promised, Matt received $3,000.00 commission from the principal payment of $100,000.00 made at the closing.

On January 25, 2008, Matt assigned all future commission payments (at that time $33,000.00 was owed) on the Turner/Cooper contract to Jenny. The Turners acknowledged the assignment and agreed to make the commission payments directly to Jenny. The Turners made six further commission payments (of $2,500.00 each) to Jenny, totaling $15,000.00.

Meanwhile, Cooper Development failed to make any additional principal payments after the initial $100,000.00. The contract between it and the Turners was twice renegotiated over the course of three years. Interest payments were made by Cooper totaling $27,115.00, the last one being in March 2009.

Cooper Development ultimately defaulted on the note. In February 2010 the Turners sold the note to R. J. Corman for $500,000.00. The Turners did not make any further commission payments to Jenny. Neither Matt nor Jenny was involved in the sale of the note.

On June 13, 2014, Jenny sued the Turners for $18,000.00 in unpaid commissions. The Turners denied that any monies were due Jenny. They stated in their answer to her complaint that commission was only to be paid upon receipt of principal. Because only the initial principal payment was made from Cooper to them (for which Matt received commission due), the Turners stated that they were no longer obli-

gated to make any further commission payments. The Turners also pointed out that both the original agreement with Cooper Development and the sale of the note to R. J. Corman were negotiated by them without the aid of Matt. Their oral agreement to pay Matt commission in 2005 was one of convenience to them, so that he could handle "the logistics of closing, such as making sure all paper work was prepared and ready."

Both parties moved for summary judgment, each claiming that there were no genuine issues of material fact. Memoranda, documents, and affidavits were filed in support. A hearing was held in Jessamine Circuit Court on December 11, 2014. Arguments were heard from both parties' counsel; neither called witnesses. The trial court announced its decision from the bench, agreeing with the parties that the facts were not at issue, that it was merely a matter of analyzing the agreement and entering conclusions of law. The order granting the Turners' motion for summary judgment was entered at the conclusion of the hearing.

In her appeal Jenny argues that summary judgment was inappropriate, that there were genuine issues of material fact concerning the amount due her, and that case law supports her position that commission was due because it was not tied to the amount received from the seller. We consider her arguments separately.

Jenny cannot credibly maintain that there were genuine issues of material fact since she herself moved for summary judgment, and in so doing argued conversely.

The standard of review on appeal when a trial court grants a motion for summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled

to judgment as a matter of law." The trial court must view the evidence in the light most favorable to the nonmoving party, and summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. The moving party bears the initial burden of showing that no genuine issue of material fact exists, and then the burden shifts to the party opposing summary judgment to present "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." The trial court "must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists." While the Court in *Steelvest[, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991),] used the word "impossible" in describing the strict standard for summary judgment, the Supreme Court later stated that that word was "used in a practical sense, not in an absolute sense." Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*. [Citations in footnotes omitted.]

*Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001).

■ Because both parties moved for summary judgment (and in effect agreed that the issues to be decided were of law rather than of fact), the trial court properly determined that the case should be decided on contract interpretation. The trial court agreed with Jenny's argument that the initial contract between the Turners and Cooper Development contained a paragraph that contained this ambiguity:

1.8 Commissions. Seller shall pay a three (3%) percent realtor or broker's fee to Matt Miniard calculated on the **principal and interest received** by Seller from Buyer under the schedule attached as Exhibit "A" to the Mortgage Note. It is understood and agreed that Buyer is under no obligation to make any payments directly to Matt Miniard and that the sole responsibility of the Buyer is to make the full payment of **principal and interest due** under the schedule to the Seller with no duty to Matt Miniard whatsoever. Otherwise, Buyer and Seller each represent and warrant to the other that each party has dealt with no other broker, agent or other person in connection with this transaction and that no broker, agent or other person brought about this transaction, and Buyer and Seller agree to indemnify and hold the other party harmless from and against any claim by any other broker, agent or other person claiming a commission or other form of compensation by virtue of having dealt with such party with regard to this transaction.

(Emphasis added.) The trial court found that this paragraph could bolster Jenny's argument that she was due commission on the interest payments made by Cooper to the Turners.

However, the trial court believed that two factors defeated Jenny's argument; namely, that Matt was not a party to the first contract (although he had initialed the pages), and that he had agreed to a commission of $36,000.00, which equals 3% of the total contract price without interest. Jenny never argued that she was due more than $36,000.00.

More importantly, the trial court found that Matt's assignment to Jenny (which was drafted by the Miniards) did not use the word "interest" in terms of the type of payment which would trigger a commission fee. The assignment specifically stat-

ed, in pertinent part: "Both Paul Turner & Matt Miniard agreed that the real estate commission is to be 3% or $36,000 **total** real estate commission. Payable as the Turner[s] received the **principal installments** on the note." (Emphasis added.)

■ There was no ambiguity in the instrument assigning Matt's commission to Jenny. "Absent an ambiguity in the contract, the parties' intentions must be discerned from the four corners of the instrument without resort to extrinsic evidence." *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000). Since the contract was prepared by the Miniards, we are constrained to construe the document more strongly against them. *Wiggins v. Schubert Realty & Inv. Co.*, 854 S.W.2d 794, 796 (Ky. App. 1993). "[A]s the party preparing and offering the contract to [the Turners], and as the party seeking compensation for [Matt's] services, [the Miniards] had it totally within [their] power to include in the [assignment] appropriate language that would have entitled [Matt] to a commission for any qualifying sale of less than all of the land" or for interest or partial payments or sale of the mortgage note. *Id.*

Furthermore, the trial court stated at the hearing that there was "no evidence at all of bad faith" by the Turners, "no evidence of manipulation, of switching identity of payments from principal to interest." In fact, the trial court found that the Turners had been under no obligation to pay the additional sums of $15,000.00 when Matt had been compensated for the only principal payment made during the contract between the Turners and Cooper Development. During the hearing the trial court questioned whether the Turners would counterclaim for the $15,000.00, and their counsel responded that, without ceding the issue, his clients chose not to pursue that recourse because of "the expense of litigation."

We hold that "the Circuit Court did not abuse its discretion by granting summary judgment" to the Turners. *Admin. Office of Courts v. Miller*, 468 S.W.3d 323, 331 (Ky. 2015).

The judgment of the Jessamine Circuit Court is affirmed.

ALL CONCUR.